813 So.2d 351 (2002)
CLECO EVANGELINE, LLC,
v.
LOUISIANA TAX COMMISSION.
No. 2001-C-2162.
Supreme Court of Louisiana.
April 3, 2002.
*352 Brian A. Eddington, Theodore L. Jones, Baton Rouge, Counsel for Applicant.
Robert S. Angelico, Cheryl M. Kornick, Liskow & Lewis, New Orleans, Counsel for Respondent.
William M. Backstrom, Jr., Edward H. Bergin, Miriam W. Henry, New Orleans, David M. Mackintosh, Counsel for Louisiana Generating LLC (Amicus Curiae).
Luke F. Piontek, Baton Rouge, Counsel for Sempra Energy Resources (Amicus Curiae).
Christopher J. Dicharry, Phyllis D. Sims, Counsel for Williams Energy Marketing & Trading Co., Dynegy Inc., Louisiana Mid-Continent Oil & Gas Association, Louisiana Association of Business (Amicus Curiae).
Walter R. House, Jr., Daryl K. Manning, Baton Rouge, Counsel for Louisiana Department of Economic Development (Amicus Curiae).
WEIMER, Justice.
We granted a writ in this matter to resolve an issue of first impression that arises from the interpretation of a state taxing provision. Specifically, we must determine if Cleco Evangeline, LLC, a wholesale electric-power generating plant, is an "electric power company," as defined in LSA-R.S. 47:1851(E), thus having its property constitute "public service properties," as defined in LSA-R.S. 47:1851(M), or whether its property constitutes "other property" for purposes of assessing ad valorem taxes pursuant to La. Const. Art. VII, § 18(B). For the following reasons, we affirm the decisions of the trial court and the court of appeal, which found the property at issue is not public service property.

BACKGROUND
The following facts, including the structure of various Cleco entities, are undisputed. Cleco Evangeline, LLC (Cleco Evangeline) is constructing a new, wholesale electric-power manufacturing facility in Evangeline Parish (Evangeline plant). The parent, Cleco Corporation, is a holding company that owns both regulated and non-regulated entities. Cleco Utility Group, Inc., is the parent of the entities that are regulated by the Louisiana Public Service Commission (LPSC). On the other side of the corporate structure, Cleco Midstream Resources is the parent company of Cleco's non-regulated entities, including Cleco Evangeline. The non-regulated companies are separate from the regulated companies. Cleco Evangeline was specifically formed to own and build the Evangeline wholesale facility (Evangeline plant), and it has no involvement with the regulated side of the Cleco companies. The completed Evangeline plant will be funded separately by private investors. By order issued March 25, 1999, the LPSC declined *353 to exercise its regulatory jurisdiction over the new facility, determining that the property should not be included in the valuation of the rate base for the regulated entity, Cleco Utility Group, Inc.
In sum, the new Evangeline plant is a non-regulated entity owned by another non-regulated entity. Eventually, the Evangeline plant will be funded by private investors and will be operated separately from Cleco Utility Group, Inc., the regulated public utility company. When it is operational, the Evangeline plant will engage primarily in the business of manufacturing, generating and supplying electricity for sale exclusively on the wholesale market, not to the general public or to the ultimate consumer.
On March 30, 1999, Robert A. Pulaski, controller for Cleco Corporation, sent a letter to the Evangeline Parish Assessor regarding the assessment locally of the Evangeline plant at the ad valorem property tax rate of 15 percent of the property's fair market value. On June 8, 1999, the Louisiana Tax Commission (LTC) notified Cleco of its finding that the Evangeline plant was "public service property," which must be assessed centrally by the State at an ad valorem property tax rate of 25 percent of the property's fair market value. Thus, the determination to we made is whether the property will be assessed locally at 15 percent or by the State at 25 percent.
Cleco Evangeline filed a formal protest of the LTC's determination, and the matter was heard before the LTC on November 3, 1999. On February 22, 2000, the LTC issued a ruling that the Evangeline plant was public service property and would be centrally assessed by the LTC at 25 percent of fair market value.
Cleco Evangeline sought review of the LTC ruling in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. On January 29, 2001, the district court, with the Honorable John Perry, Jr., Judge Pro Tempore presiding, reversed the LTC's ruling, holding the Evangeline plant was not public service property and should be assessed locally at 15 percent.
The LTC perfected an appeal to the Court of Appeal, First Circuit. On June 22, 2001, the appellate court rendered an opinion affirming the decision of the district court. LTC filed an application for writ of certiorari.

DISCUSSION
The sole issue before us is a question of law which seeks the correct interpretation of definitions of "electric power company" in LSA-R.S. 47:1851(E) and "public service properties" in LSR.S. 47:1851(M) and their application in the ad valorem tax provision of La. Const. Art. VII, § 18(B). We review the matter de novo, and render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state. Washington-St.-Tammany Electrical Cooperative, Inc. v. Louisiana Public Service Commission, 95-1932, p. 6 (La.4/8/96), 671 So.2d 908, 912.
The Louisiana Constitution, Article VII, § 18 provides in pertinent part:
(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which ... shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification *354 for the purpose of determining assessed valuation are as follows:

Classifications Percentages
1. Land 10%
2. Improvements for residential
 purposes 10%
3. Electric cooperative properties,
 excluding land 15%
4. Public service properties, excluding
 land 25%
5. Other property 15%

The legislature may enact laws defining electric cooperative properties and public service properties.
. . . .
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor.
Pursuant to this constitutional provision, the legislature has defined public service properties in LSA-R.S. 47:1851(M), which provides in pertinent part:
"Public service properties" means the immovable, major movable, and other movable property owned or used but not otherwise assessed in this state in the operations of each airline, electric membership corporation, electric power company, express company, gas company, pipeline company, railroad company, telegraph company, telephone company and water company. [Emphasis provided.]
Section (E) of LSA-R.S. 47:1851 provides the definition of electric power company:
"Electric power company" means a company primarily engaged in the business of manufacturing, generating, supplying, or manufacturing, generating and supplying electricity for light, heat, or power to consumers in this state.
Cleco and LTC agree that the Evangeline plant will be primarily engaged in the business of manufacturing, generating, and supplying electricity, but the output of its electric-power manufacturing facility is destined for sale to wholesalers and/or tollers,[1] rather than to retail customers. The disagreement arises from different interpretations of the phrase "to consumers in this state" which the legislature has used in LSA R.S. 47:1851(E), but has not defined.
It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. See United States v. Apfelbaum, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. This principle applies to tax statutes. Tarver v. E.I. Du Pont De Nemours and Company, 93-1005, p. 3 (La.3/24/94), 634 So.2d 356, 358.
In interpreting statutes, the court must give the words of a law their generally prevailing meaning. Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 894 (La.1993). The operative word in this matter is "consumer." The word is defined in BLACK'S LAW DITIONARY 316, (6th Ed. Rev. 1990), as: "One who consumes. Individuals who purchase, use, maintain, and dispose of products and services.... Consumers are to be distinguished from manufacturers (who *355 produce goods), and wholesalers or retailers (who sell goods).... A buyer (other than for purpose of resale) of any consumer product." Thus, the wholesaler or toller that purchases the output from the Evangeline plant is not a consumer because both act as middle persons simply transferring the electricity to others that ultimately consume the electricity. As applied in this context, the "consumer" is the ultimate user of the electricity generated by the Evangeline plant, not the wholesaler or toller to which Cleco Evangeline sells its electricity.
Despite the fact that the product of the Evangeline plant will be sold to wholesalers as opposed to consumers, the LTC asserts the Evangeline plant meets the definition of "electric power company." Its argument is two-fold.
First, the LTC argues the fact that the Evangeline plant does not intend to engage in direct sales of electricity to consumers is irrelevant. The output of the plant will ultimately be used by consumers for light, heat or power, and there is no "direct sales" provision in LSA-R.S. 47:1851.
This argument fails because to read the statute in the suggested manner would be to ignore the plain meaning of the word "consumer" and to broaden the phrase "to consumers in this state" to include "whether directly or through a middleperson." Words defining a thing to be taxed should not be extended beyond their clear import. Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 54, 196 So. 15, 18 (1940).
In further support of its argument that the appellate court incorrectly focused on the word "consumers" in its analysis, the LTC points to the fact that when the statute was enacted in 1976, there was no wholesale marketing of electricity. The LTC states it is illogical to conclude the legislature intended to exclude wholesale generators from the definition of "electric power company" when there was no business engaging predominately in the wholesaling of electricity at the time the statute was adopted. The flaw in this argument is that our focus in interpreting this statute is not on legislative intent to either include or exclude, but on the meaning of the plain language of the statute. The LTC's argument is contrary to the principle that definitions of the thing taxed should not be extended beyond the clear import of the wording of the statute. Id. This court has twice rejected similar arguments. See Radiofone, Inc. v. City of New Orleans, 616 So.2d 1243, 1248 (La.1993) (a pre-existing tax could not be construed as covering the new development of cellular communications); Cox Cable New Orleans, Inc., 624 So.2d at 895, (pre-existing tax could not cover cable television services which did not exist when tax was enacted).
Cleco Evangeline's reasoning on this point is more compelling: because there was no wholesale market for electricity until Congress passed the Federal Energy Policy Act of 1992, allowing deregulation of the energy industry, it cannot be presumed the legislature intended to include such an operation in the statutory definition. Absent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question. Unless the words imposing the tax are expressly in the statute, the tax cannot be imposed. Hibernia Nat. Bank in New Orleans, 195 La. at 54, 196 So. at 18.
Second, the LTC argues that an analysis of the definition of "public service properties" in LSA-R.S. 47:1851(E) that would exclude the Evangeline plant would be in *356 contravention of the constitutional mandate that properties of the same class be taxed uniformly. La. Const. Art. VII, § 18(A). Because an interpretation that renders a statute unconstitutional should be avoided, the LTC urges, the courts below erred in basing their analysis on the nature of the sales of the output of the facility. The LTC further argues an analysis based on the nature of the property, as opposed to the use of the property, would be appropriate in a contest involving an ad valorem tax and would not render the statute unconstitutional.
The answer to this argument is that the legislature specifically imposed a tax on a certain type of a certain class of property by referring to the use of the property, that is, an "electric power company" that supplies electricity to consumers in this state. The use of property is an integral part of the determination of a property's classification. Improvements to immovable property can fall into the category of property subject to the 10, 15, or 25 percent of fair market value depending upon whether such improvements are to residential property, "other properties," or public service property. Thus, the use of the property is an appropriate consideration. By legislative definition referring to the use of the property, the Evangeline plant is not a public service property. LSA-R.S. 47:1851(E) and (M).
Because the Evangeline plant is not a public service property which is taxed at a 25 percent rate, it is "other property" which is taxed at a 15 percent rate. See La. Const. Art. VII, § 18(B). The fact that "electric power companies" that sell power "to consumers in this state" are taxed at a 25 percent rate and the Evangeline plant that will sell power to wholesalers, not consumers, is taxed at a 15 percent rate does not violate the constitutional provision that "the same class of property" be taxed uniformly. See La. Const. Art. VII, § 18(A). The two types of facilities are in two different classes named in the constitutional classifications of properties. Id.
Thus, we conclude that when the words "to consumers in this state" are given their plain meaning, the provisions of LSA-R.S. 47:1851(E) are clear and unambiguous. It is immaterial that the legislature did not define the word "consumers."
Even if we were to find that the word "consumers" needs clarification, we agree with the appellate court that the LTC's argument is self-defeating. Taxing statutes must be strictly construed against the taxing authority; where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is to be adopted. Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991). Thus, we hold that ambiguity, if any, in the provisions of LSA-R.S. 47:1851(E) defining "electric power company" is interpreted so as not to extend the definition to the Evangeline plant.
AFFIRMED.
NOTES
[1] Testimony at the LTC hearing was that the Evangeline plant has no retail customers to serve. Instead, a toller or a natural gas company is going to put its gas through the plant, take the output, and then sell the output on the wholesale market.