# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-0134

RAPIDES PARISH COMMUNICATIONS DISTRICT

VERSUS

CENTURY CELLUNET OF NORTH LOUISIANA CELLULAR LIMITED
PARTNERSHIP D/B/A CENTURY CELLUNET

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 202,580
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett,
Judges.

**AFFIRMED.**

**Field V. Gremillion, III
Attorney at Law
Post Office Box 731
Alexandria, LA 71309
(318) 445-6021
COUNSEL FOR PLAINTIFF/APPELLANT:**
    Rapides Parish Communications District

**Walter C. Dunn
The Boles Law Firm
Post Office Box 2065
Monroe, LA 71207
(318) 388-4050
COUNSEL FOR DEFENDANT/APPELLEE:**
    Century Cellunet of North Louisiana Cellular Limited Partnership
    d/b/a Century Cellunet

PETERS, J.

The Rapides Parish Communications District appeals a judgment dismissing its claim against Century Cellunet of North Louisiana Cellular Limited Partnership d/b/a Century Cellunet (Century Cellunet) for, among other relief, 911 service charges it contends that Century Cellunet should have collected from its wireless customers. For the following reasons, we affirm.

## LITIGATION BACKGROUND

This litigation has as its beginnings the Louisiana Legislature's passage in 1983 of 1983 La. Acts No. 550, § 1 (Act 550), which enacted La.R.S. 33:9101 through La.R.S. 33:9106, establishing communications districts and providing for their operation and financing. Louisiana Revised Statutes 33:9101 provided that "[t]he governing authority of any parish may by ordinance create communications districts composed of any part of all of the territory lying wholly within the parish." Pursuant to La.R.S. 33:9102, the stated purpose for creating such a district was "to shorten the time required for a citizen to request and receive emergency aid." To that end, La.R.S. 33:9102 established the number 911 "as the primary emergency telephone number for use in communications districts" established pursuant to the statutory authority.

Anticipating a need for a financing source to operate a communications district, La.R.S. 33:9106(B)(1) provided in part: "The governing authority of the district may, when so authorized by a vote of a majority of the persons voting within the district in accordance with law, levy an emergency telephone service charge in an amount not to exceed five percent of the tariff rate." Louisiana Revised Statutes 33:9106(B)(3) provided that the imposed charge "shall be imposed only upon the amount received from the tariff rate exchange access lines." Louisiana Revised Statutes 33:9106(B)

charged the service supplier, defined in La.R.S. 33:9106(A)(4) as "any person providing exchange telephone service to any service user throughout the parish," with the duty of collecting the service charge. Additionally, the term "exchange access facilities" was defined in La.R.S. 33:9106(A)(1) as "all lines, provided by the service supplier for the provision of local exchange service, as defined in existing general subscriber services tariffs."

On February 18, 1986, and pursuant to the authority of Act 550, the Rapides Parish Police Jury adopted an ordinance creating a parish-wide communications district known as the Rapides Parish Communications District (District). At a special election held on November 4, 1986, the voters of Rapides Parish authorized the District to "levy and collect a special emergency telephone surcharge not to exceed 5% of the tariff rate for local telephone service supplied within the district for the purpose of establishing, maintaining and operating the 911 emergency telephone system . . . ." Importantly, at the time Rapides Parish residents voted to authorize the service charge, La.R.S. 33:9101 through La.R.S. 33:9106 expressly referred to "lines" and "exchange telephone service," but did not expressly refer to wireless service, such as cellular phone service.

However, by 1997 La. Acts No. 758, § 1 (Act 758),[1] the legislature amended the law to, among other things,[2] expressly refer to wireless service in La.R.S. 33:9131.6.[3] Notably, La.R.S. 33:9131.6(B)(1) retained the requirement that an

---

[1]The communications district statutes have undergone various amendments, but we will refer only to those amendments that are at issue in this matter.

[2]Act 758 expressly provided for the inclusion of the communications district in Rapides Parish within the meaning of "district" as used in that Section.

[3]Louisiana Revised Statutes 33:9131.6 was originally designated as La.R.S. 33:9131.5, but its designation was changed pursuant to the statutory revision authority of the Louisiana State Law Institute.

emergency telephone service charge be submitted for vote and authorization by a majority of the persons voting within the district. Additionally, La.R.S. 33:9131.6(B) retained the requirement that the service supplier collect the service charge, while La.R.S. 33:9131.6(A)(5) this time expressly defined a service supplier as including a person providing wireless service.

On October 8, 1997, and acting upon the authority of Act 758, the District passed a resolution converting the service charge to a flat fee of sixty-three cents per month per service number, providing for the payment of the service charge by the service user of "non-fixed location wireless telecommunications service," and providing for the collection of the service charge by the service supplier. The District took this action without submitting to the voters the issue of the service charge assessment in connection with wireless service. By letters issued in September and October 1997, the District notified Century Cellunet of the implementation of its resolution and requested Century Cellunet's compliance.

On December 3, 1997, Century Cellunet responded with a letter to the District, noting "continued discussion" about the new legislation and "whether a vote is required prior to implementation" and noting that an opinion had been requested from the attorney general. Nevertheless, Century Cellunet agreed to implement the service charge provided that the District would execute a contract which contained, among other items, special provisions covering the contingency of a subsequent determination that the service charge was required to first be submitted to the voters. Specifically, Century Cellunet sought some protection in the event it was ultimately determined that the service charge on its wireless or cellular customers was not

3

authorized under Act 758 without majority vote. The District declined to sign the contract, and Century Cellunet failed to implement collection of the service charge.

The District and Century Cellunet continued negotiations in an attempt to resolve the matter. However, on December 4, 1998, the Louisiana Attorney General's office issued Opinion 97-500-A in which it concluded that "prior to the imposition of such a surcharge on wireless or cellular service, an election must be held in accordance with the provisions of LSA-R.S. 33:9131.6 to authorize same." Thereafter, Century Cellunet notified the District that, in light of the attorney general opinion, it would take no further action to implement the service charge on its wireless or cellular customers in the absence of an electorate vote.

The legislature further amended the statutes at issue by 1999 La. Acts No. 1029 (Act 1029), which, among other things, repealed La.R.S. 33:9131.6 and enacted La.R.S. 33:9109 relative to service charges for wireless service. Specifically, La.R.S. 33:9109(C)(3)(b) dispensed with the requirement of voter approval of a service charge for wireless service if the communications district already levied any emergency telephone service charge on local telephone service pursuant to voter approval. On September 14, 1999, the District passed a resolution attempting to take advantage of Act 1029 with regard to wireless or cellular services. Century Cellunet then implemented collection of the service charge effective November 30, 1999. Thus, the only collection period at issue is the period from October 8, 1997, when the District passed its resolution under the authority of Act 758, and January 2000.[4]

On December 12, 2000, the District filed suit against Century Cellunet, seeking to recover, among other relief, service charges on Century Cellunet's wireless and

---

[4]Although Century Cellunet asserted that it implemented collection of the service charge effective November 30, 1999, the District contested the implementation through January 2000.

cellular customers from October 8, 1997, through January of 2000. Century Cellunet responded with an answer and amendments to its answer as well as a peremptory exception of no right of action. Essentially, Century Cellunet defended the suit by raising the issue of the constitutionality of La.R.S. 33:9109(C), which it asserted was a sales tax requiring approval by majority vote of the voters in Rapides Parish, and by questioning the right of the District to collect a service charge on wireless service under former La.R.S. 33:9131.6 without prior vote.

After an October 12, 2004 trial on the merits, the trial court rendered judgment in favor of Century Cellunet and dismissed the District's suit on the basis that former La.R.S. 33:9131.6 was a taxing statute requiring strict construction and that the statute was sufficiently ambiguous to preclude enforcement of the collection of the service charge. On November 5, 2004, the trial court signed a judgment dismissing the District's claims, and the District has appealed that judgment.

## OPINION

We first note that the trial court did not address the constitutional issue raised in the pleadings. Additionally, neither party raises questions on appeal regarding the constitutionality of current La.R.S. 33:9109. Thus, that issue is not properly before us, so we will not address that issue at this time.

The District argues in its sole assignment of error that "the Trial Court was clearly wrong in finding that Act 758 [La.R.S. 33:9131.6] was a 'Taxing Statute' and as such, was so ambiguous as to relie[ve] Century of its obligation to collect the tariff and remit same to District." Century Cellunet responds to this argument by asserting that the service charge is a sales tax. Although specifically raised by the parties, a determination of whether or not former La.R.S. 33:9131.6 was a "Taxing Statute" is

5

not essential to the disposition of this case, and therefore we will not address this issue in resolving the litigation now before us. Instead, we resolve this appeal by application of the clear language of former La.R.S. 33:9131.6(B)(1).

Specifically, we recognize that former La.R.S. 33:9131.6(B)(1) contained the requirement of authorization "by a vote of a majority of the persons voting within the district in accordance with law" before a communications district was entitled to levy a service charge. The focus of our inquiry is on whether the added references to wireless service in Act 758, the source of La.R.S. 33:9131.6, required a separate vote for the levy of a service charge on wireless service.

"It is a well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language." *Cleco Evangeline, LLC v. La. Tax Comm'n*, 01-2162, p. 5 (La. 4/3/02), 813 So.2d 351, 354. A law must be applied as written and no further interpretation made in search of legislative intent, when the law is clear and unambiguous and its application does not lead to absurd consequences. *Id.* In interpreting a statute, a court must give the words of a law their generally prevailing meaning. *Id.* Further, the meaning of a word in a statute must be determined within the context of the whole statute. *Cox Cable New Orleans, Inc. v. City of New Orleans*, 624 So.2d 890 (La.1993).

As previously stated, La.R.S. 33:9106(B)(1), as enacted by Act 550, authorized a communications district to "levy an emergency *telephone* service charge in an amount not to exceed five percent of the tariff rate," when authorized to do so by majority vote of the persons voting within the district. (Emphasis added.) At that time, La.R.S. 33:9106(A)(2) defined tariff rate as "the rate or rates billed by a service

6

supplier . . . which represent the service supplier's recurring charges for exchange access facilities." Additionally, La.R.S. 33:9106(A)(1) defined exchange access facilities as "all *lines*, provided by the service supplier for the provision of local exchange service." (Emphasis added.) Further, La.R.S. 33:9106(A)(4) defined service supplier as "any person providing exchange *telephone* service to any service user," and La.R.S. 33:9106(A)(5) defined service user as "any person . . . who is provided exchange *telephone* service." (Emphasis added.)

Thus, according to the plain language of former La.R.S. 33:9106(B)(1), a communications district was authorized to levy a telephone service charge upon authorization by majority vote. The statute expressly referred to "lines" and "telephone service." In 1983, the generally prevailing meaning of those terms would not have encompassed wireless service. In fact, the 1986 edition of WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defined "telephone" in part as "a device in which the voice or sound causes in a thin diaphragm vibrations that are directly transmitted along a *wire* or string connecting it to a similar diaphragm thus reproducing the sound." (Emphasis added.) Additionally, it defined "line" in part as "a *wire* or pair of *wires* connecting one telegraph or telephone station with another or a whole system of such *wires*." (Emphasis added.)

Contextually, Act 550 provided a mechanism for parishes "to shorten the time required for a *citizen* to request and receive emergency aid." La.R.S. 33:9102 (emphasis added). However, as recognized by the supreme court in *Radiofone, Inc. v. City of New Orleans*, 616 So.2d 1243, 1248 (La.1993), "cellular telephone services . . . were not in operation in Louisiana before the 1980's." Moreover, even though wireless service began to be in operation in Louisiana in the 1980's, the average

7

"citizen," as contemplated by Act 550, did not even have wireless service in the form of cellular phone service. We note that in *Radiofone, Inc.*, 616 So.2d 1243, the supreme court concluded that a preexisting tax imposed in a 1968 ordinance neither authorized nor contemplated taxes for cellular phone service. Additionally, in *Cox Cable New Orleans, Inc.*, 624 So.2d 890, the supreme court held that cable television service was not contemplated within the term "production" for purposes of a tax imposed in 1940. Likewise, we conclude that La.R.S. 33:9106 did not encompass or even contemplate wireless service at the time it was enacted.

On the other hand, La.R.S. 33:9131.6, as enacted by Act 758 in 1977, for the first time referred to wireless service. Specifically, La.R.S. 33:9131.6(A)(3) defined exchange access facilities as "all lines *or their equivalent wireless service*." (Emphasis added.) Additionally, La.R.S. 33:9131.6(A)(5) defined service supplier as "any person providing a landline exchange telephone service *or cellular telephone or telecommunications service, specialized mobile radio service, personal communications service, or any form of wireless telephone or telecommunications service*," and La.R.S. 33:9131.6(A)(6) defined a service user as any person who is provided such service. (Emphasis added.) Louisiana Revised Statutes 1:9 states: "Unless it is otherwise clearly indicated by the context, whenever the term 'or' is used in the Revised Statutes, it is used in the disjunctive and does not mean 'and/or.'" Thus, it is clear that Act 758 did not clarify preexisting law but modified it to the extent of additionally including wireless service within the purview of its purposes. Act 758 was in keeping with the times, as wireless service had by that time become readily available to the average citizen.

Importantly, in 1986, the Rapides Parish voters authorized the District to "levy and collect a special emergency *telephone* surcharge" pursuant to Act 550. (Emphasis added.) As set forth above, wireless service was not included within the generally prevailing meaning of "telephone service" as the term was then understood. Although Act 758's La.R.S. 33:9131.6(B) retained the same grant of authority as Act 550's La.R.S. 33:9106(B) for a communications district to "levy an emergency *telephone* service charge" upon majority vote, it is clear that by that time the term "telephone service" had a bifurcated meaning, *i.e.*, both landline and wireless service. (Emphasis added.) Because La.R.S. 33:9131.6(B) provided for the first time a mechanism for communications districts to fund emergency telephone service for wireless users, the communications districts were required to obtain authorization by majority vote of the people before levying a service charge for wireless service.

The voters of Rapides Parish have voted to authorize the District to levy a service charge on landline service only and have not yet voted to authorize the District to levy a service charge for wireless service. Accordingly, the District had no authority to levy the service charge at issue and require Century Cellunet to implement collection of the service charge. Thus, while we analyze it differently, we find no error in the trial court's judgment and therefore affirm it.

## DISPOSITION

For the foregoing reasons, we affirm the judgment below and tax costs to the Rapides Parish Communications District in the amount of $697.50.

**AFFIRMED.**