# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-879

**LAFAYETTE GENERAL MEDICAL CENTER, INC.**

**VERSUS**

**KIMBERLY ROBINSON, SECRETARY, LOUISIANA DEPARTMENT OF REVENUE**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
LOUISIANA BOARD OF TAX APPEALS
DOCKET NO. 10437D
HONORABLE TONY GRAPHIA; CADE R. COLE, FRANCES "JAY" LOBRANO, BOARD MEMBERS, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**REVERSED AND RENDERED.**

Jesse R. Adams, III
Andre B. Burvant
Matthew A. Mantle
Jones Walker, LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170-5100
(504) 582-8364
COUNSEL FOR APPELLANT:
    Lafayette General Medical Center, Inc.

Russell J. Stutes, Jr.
Stutes & Lavergne, LLC
600 Broad Street
Lake Charles, LA 70601
(337) 433-0022
COUNSEL FOR APPELLEE:
    Louisiana Department of Revenue

**COOKS, Judge.**

Appellant, Lafayette General Medical Center, Inc. (hereafter LGMC), appeals the judgment of the Louisiana Board of Tax Appeals granting summary judgment in favor of Kimberly Lewis Robinson, in her official capacity as Secretary of the Department of Revenue, State of Louisiana (hereafter Department). For the following reasons, we reverse the grant of summary judgment in favor of the Department and grant summary judgment in favor of LGMC.

### FACTS AND PROCEDURAL HISTORY

As LGMC notes, the issue in this appeal concerns whether, during the November 2016 sales tax period, the Louisiana Constitution's prohibition against state general sales and use taxes on "prescription drugs" set forth in La.Const. Art. VII § 2.2(B)(3) prohibits the imposition of those taxes on purchases by LGMC of medical devices, such as pacemakers, stents, artificial limbs, etc., used in the treatment of patients.

The Louisiana Legislature in the 1st Extraordinary Session of 2016 passed Acts 25 and 26, both of which went into effect April 1, 2016, and were to expire on June 30, 2018. The Acts suspended nearly all exclusions and exemptions from two pennies of Louisiana sales and use tax and added an additional penny, which was imposed with a similarly reduced set of exemptions and exclusions. The exemption of medical devices does not specifically appear anywhere in the list of preserved exemptions. There was an exemption for "prescription drugs" expressly listed in Acts 25 and 26. The list in both Acts 25 and 26 contains the following statement in the list of preserved exemptions:

> Prescription drugs, as provided in Article VII, § 2.2 of the Constitution of Louisiana.

Article VII, § 2.2 of the Louisiana Constitution provides in pertinent part:

(B) Effective July 1, 2003 the sales and use tax imposed by the state of Louisiana or by a political subdivision whose boundaries are coterminous with those of the state shall not apply to sales or purchases of the following items:

. . .

(3) Prescription drugs.

LGMC maintained the phrase "prescription drugs" found in Section 2.2 extended to "medical devices." LGMC argued it was the goal and intent of the constitutional prohibition to permanently cement into the Louisiana Constitution the statutory exemption for "drugs prescribed by a physician or dentist" in La.R.S. 47:305(D)(1)(j), which had previously included pharmaceuticals and medical devices, and not allow it to be suspended or otherwise affected based simply on revenue needs. LGMC's argument was largely based on La.R.S. 47:301(20), which provides in pertinent part:

301. Definitions
As used in this Chapter the following words, terms, and phrases have the meanings ascribed to them in this section, unless the context clearly indicates a different meaning. . . .

. . .

(20) "Drugs" includes all pharmaceuticals and medical devices which are prescribed for use in the treatment of any medical disease. . . .

The Department countered that the plain meaning of "prescription drugs" does not include medical devices such as an artificial hip or pacemaker and the plain meaning of a prescription drug is a *substance* used as a medication or in the preparation of medication.

On December 20, 2016, LGMC submitted a payment under protest of $145,719 to the Department for the November 2016 tax period with respect to the purchases of medical devices. Thereafter, on January 18, 2017, LGMC filed a petition with the Louisiana Board of Tax Appeals claiming its purchases of medical devices were excluded from sales tax under La.Const. Art. VII § 2.2(B)(3), which

applies to "prescription drugs." LGMC also Asserted in its petition that certain medical devices were exempt from sales tax because they were purchased by or under the provisions of Medicare, and, alternatively, that some medical devices were exempt under La.R.S. 47:305(D)(1)(k) and La.R.S. 47:305(D)(1)(l).

Asserting there were no material facts in dispute, both the Department and LGMC filed cross-motions for summary judgment with the Tax Board to address the legal issue of whether the prohibition in La.Const. Art. VII, § 2.2(B)(3) prohibits the imposition of sales taxes on the purchases of medical devices. The parties jointly requested that the cross-motions be decided on briefs.

On July 11, 2018, the Board rendered and signed a Judgment in favor of the Department and against LGMC, finding that Article VII, § 2.2 of the Louisiana Constitution does not exempt medical devices from sales and use taxes. The Board concluded Acts 25 and 26 of the 1st Extraordinary Session of 2016 specifically preserved only the exemption set forth in Article VII, § 2.2 and did not preserve the exemption for medical devices. The following reasoning was given by the Board:

> In La.Const. Art. VII, § 2.2(B)(1) the Legislature and the people directed that no sales tax should be applied to "Food for home consumption, as defined in R.S. 47:305(D)(1)(n) through (r) on January 1, 2003." However, in Paragraph (3) of that same Subsection, the Legislature and the people did not import any statutory definition, but merely directed that "[p]rescription drugs" be excluded from state sales and use tax. The Board is required to follow the Supreme Court's directive that "[u]nequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning." *Ocean Energy* [*Inc. v. Plaquemines Parish Government*], 04-0066, p.7 [La. 7/6/04), 880 So.2d 1], at 6-7.

> The Board finds that the legislative history also fails to support the Taxpayer's argument that the Legislature and the voters intended to import a technical meaning into the Constitution. The underlying statutory exemptions are broader in scope than the constitutional exemption. In 2016, the Legislature decided to suspend these two statutory exemptions, but in Act 426 of 2017 the Legislature reversed course and reinstated the statutory medical device exemption by adding it to the Retained Exemptions List effective July 1, 2017. When the Legislature changes the wording of a statute, it is presumed to have intended a change in the law. There would have been no need for act 426 under the Taxpayer's reading of the 2016 enactments.

4

The Board finds that the phrase Prescription drugs is clear and unambiguous. Considering the definitions offered and the common and ordinary understanding of the meaning of "prescription drugs," the Board finds that there is no basis for including Medical devices within the scope of the constitutional exemption. The Taxpayer's Motion for Partial Summary Judgment requesting that the Board rule that the constitutional provision under consideration included Medical devices and to order the return of the $145,719.00 paid under protest on that basis, is denied. The [Department's] Motion for Summary Judgment is granted on the same issue.

A final, appealable judgment was entered, wherein the Department's motion for summary judgment was granted and LGMC's petition was dismissed in its entirety. This appeal followed, wherein LGMC asserts the following assignments of error:

1. Considering that for over 32 years the Sales Tax exemption for prescription drugs has covered medical devices and that the legislature intended to cement that exemption in the constitution, the Board erred in ruling that the legislative history fails to support the position that the constitutional prohibition on imposing Sales Tax on prescription drugs applies to medical devices.

2. The Board erred in failing to address the Department's own policy documents and publications, which confirm the Department's understanding that the constitutional prohibition in La.Const. Art. VII § 2.2(B)(3) applies to medical devices.

3. Considering the Department's long-standing contemporaneous construction that the constitutional prohibition in La.Const. Art. VII § 2.2(B)(3) applies to medical devices, the Board erred in failing to give the Department's long-standing interpretation substantial and decisive weight in this case.

4. Considering all of the facts that distinguish the present case from *Ocean energy*, such as the legislative history and the Department's long-standing interpretation in [LGMC's] favor, the Board's reliance on *Ocean Energy* is misplaced and the Board erred in misapplying the Supreme Court's legal analysis in *Ocean Energy*.

5. Considering the ambiguity in La.Const. Art. VII § 2.2(B)(3), perhaps evidenced best by the Department's own change in interpretation, the Board erred in failing to consider that constitutional prohibitions from the imposition of tax are interpreted liberally in favor of taxpayers and against taxation.

5

6. The Board erred in dismissing [LGMC's] petition in its entirety, considering the parties only moved for summary judgment on the constitutional prohibition in La.Const. Art. VII § 2.2(B)(3), the parties did not seek a ruling on other claims [LGMC] asserted in its Petition, and the Board did not rule on the other claims asserted in [LGMC's] Petition.

7. The Board erred in granting the Department's Motion for Summary Judgment and in denying [LGMC's] Motion for Partial Summary Judgment.

## ANALYSIS

Below and on appeal, the Department has noted La.R.S. 47:305(D)(1)(j) has different wording than Art. VII, § 2.2, exempting from state sales and use tax "***drugs*** prescribed from a physician or dentist." It contrasts that with Art. VII, § 2.2, which provides that the state sales and use tax shall not apply to "***Prescription drugs***." However, we find this is a distinction without any real difference, as La.R.S. 47:305(D)(1)(j) specifically references "drugs prescribed." Clearly, this is the same as "Prescription drugs" as set forth in Art. VII, § 2.2.

The Board relied on the Louisiana Supreme Court case of *Ocean Energy, Inc. v. Plaquemines Parish Government*, 04-66, p. 7 (La.7/6/04), 880 So.2d 1, 7, to find that "[u]nequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning." LGMC does not dispute this but does contend that the constitutional provision at issue here is far from unequivocal. The *Ocean Energy* court set forth the law pertaining to the interpretation of constitutional provisions:

> The starting point in the interpretation of constitutional provisions is the language of the constitution itself. *East Baton Rouge Sch. Bd. v. Foster*, 02-2799, p. 15 (La.6/6/03), 851 So.2d 985, 996. When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect. *Id.* Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. *Cajun Elec. Power Co-op. v. Louisiana Pub. Serv. Com'n*, 544 So.2d 362, 363 (La.1989) (on rehearing).

6

When the constitutional language is subject to more than one reasonable interpretation, it is necessary to determine the intent of the provision. *East Baton Rouge Parish Sch. Bd.*, 02-2799 at pp. 15-16, 851 So.2d at 996. In seeking to ascertain constitutional intent, the same general rules used in interpreting laws and written instruments are followed. *East Baton Rouge Parish Sch. Bd.*, 02-2799 at p. 16, 851 So.2d at 996. When construing an ambiguous constitutional provision, a court should ascertain and give effect to the intent of both the framers of the provision and of the people who adopted it; however, in the case of an apparent conflict, it is the intent of the voting population that controls. *Id.*

In construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed. *Succession of Lauga*, 624 So.2d 1156, 1160 (La.1993). Additionally, if one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail. *Perschall v. State*, 96-0322, p. 22 (La.7/1/97), 697 So.2d 240, 255. However, where the language of a constitutional prohibition makes its aim evident and unequivocal, courts need not consider the historical basis for the prohibition and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions. *Perschall*, 96-0322 at p. 22, 697 So.2d at 256.

*Id.* at 7.

LGMC points to the *Ocean Energy* court's statement that "[w]hen the constitutional language is subject to more than one reasonable interpretation, it is necessary to determine the intent of the provision." *Id.* It argues the Board and the Department are focusing solely on the proffered dictionary definitions of the term "drugs" and disregarding the legislative history and legislative intent behind the constitutional prohibition in Art. VII, § 2.2. We agree with LGMC that the Department erroneously argues there is "simply no plausible argument" that the term "prescription drugs" can include medical devices. It is undisputed that since its inception in 1985, La.R.S. 47:301(20) has defined the term "drugs" to include "all pharmaceuticals *and medical devices.*" LGMC argues it is clear the term is ambiguous, as the Department itself has given this same term two different

7

meanings.  We agree and find the constitutional language in question is subject to more than one interpretation.

Finding that the term "prescription drugs" is subject to different interpretations, *Ocean Energy* instructs it is then "necessary to determine the intent of the provision." *Id*. at p. 7.  This is done by considering "the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed." *Id.*

LGMC points out in 2002, the "Stelly Plan" was passed to eliminate the ability of the legislature to place "temporary taxes" on certain statutory exemptions, by placing into the Louisiana Constitution a prohibition against the imposition of sales taxes on food for home consumption; natural gas, electricity and water for residential use; and prescription drugs.  In brief, LGMC provides the explanation given to the house by the author of the Stelly Plan, Representative Victor T. Stelly, who stated:

> The first and foremost idea on this is to eliminate the temporary taxes.  Eliminate the temporary taxes. . . .
>
> What we want to do, number one, with the constitutional amendment, is to eliminate the sales tax on food for home consumption, prescription drugs, and utilities at residences.  Those three things.  Now, that is not in the constitution now.  Why am I trying to take a tough, make the tough issue even tougher [by] making it a constitutional amendment? . . .  The reason that I would like to put it in the constitution is because when you talk to the people and you say "folks, we're going to do away with the temporary taxes."  And they say "yeah, until the next time you need money.  Just like you did away with the penny two years ago.  And you brought it right back."  I want to be able to say "no, we're not.  No we're not.  It's in the constitution." . . .
>
> So that's all I want to do in the constitutional amendment.  The people will be voting to do away with sales tax on food, drugs, and utilities, which we don't tax drugs now.  But we did at one time, and I want to make it clear you [won't] do this again.

LGMC argues this clearly shows the goal behind the constitutional prohibition against sales tax on prescription drugs in La.Const. Art. VII, § 2.2(B)(3) was to

transfer the longstanding sales tax exemption for prescription drugs, as provided in the sales and use tax statutes, into the constitution as a prohibition that cannot be suspended or altered at the whim of the legislature. Certainly, the fact that the statutory exemption for prescription drugs had previously always included medical devices, and no taxes for medical devices were paid prior to passage of Act 25 and 26 of the 2016 Extraordinary Session, lends credence to LGMC's contention. Further, what occurred with Act 25 and 26 in 2016 is the type of situation which the Stelly Plan was designed to prevent, i.e., the suspension or alteration of exemptions to create "temporary taxes."

As our supreme court noted long ago, "[t]he members of the Legislature are presumed to know the law." *State ex rel. Varnado v. Louisiana Highway Commission*, 177 La. 1, 147 So. 361, 362 (1933). Further, "[t]he legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter." *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-582, p. 10 (La. 11/29/06), 943 So.2d 1037, 1045. Therefore, the legislature is presumed to know the statutory sales tax exemption for "drugs prescribed by physicians" has existed since 1973 and the corresponding statutory definition of "drugs" (which specifically included medical devices) has remained unchanged since 1985. There is no other definition of "drugs" or "prescription drugs" found anywhere in Louisiana's statutes.

LGMC maintains that Art. VII, § 2.2 bootstraps the definition of "drugs" found in La.R.S. 47:301(20), which specifically defined "drugs" to include "all pharmaceuticals and medical devices which are prescribed for use in the treatment of any medical disease." La.R.S. 47:301(20) was enacted in the 1985 Regular Session of the legislature. The Department contends that when the legislature agreed to suspend exemptions in 2016, it could have specifically incorporated the exemption for drugs found in La.R.S. 47:305(D)(1)(j) and the corresponding

9

definition for "drugs" found in La.R.S. 47:301(20). The Department notes the Legislature did just that two paragraphs above in Article VII, § 2.2(B)(1) with regard to the constitutional prohibition for "food for home consumption, as defined in R.S. 47:305(d)(1)(n) through (r) on January 1, 2003." The Department argues the Legislature did not do so, and only chose to exempt "prescription drugs, as provided in Article VII, § 2.2(B) of the Constitution of Louisiana." It argues this refutes LGMC's argument that Art. VII, § 2.2(B)(3) bootstrapped the exemption and/or definition of "drugs" that includes medical devices. LGMC counters that the constitutional prohibition for "food for home consumption" was much broader than the statutory "food for home consumption" counterpart in La.R.S. 47:305(D)(1)(n), which necessitated a statutory citation reference for clarity. LGMC asserts the framers were attempting to use the short-formed phrase "food for home consumption" to also "mean, include, and incorporate. . . six (6) separate statutory exemptions: 'food sold for preparation and consumption in the home including by way of extension and not of limitation bakery products' in La.R.S. 47:305(D)(1)(n); 'dairy products' in La.R.S. 47:305(D)(1)(o); 'soft drinks' in La.R.S. 47:305(D)(1)(p); 'fresh fruits and vegetables' in La.R.S. 47:305(D)(1)(q); and 'package foods requiring further preparation by the purchaser' in La.R.S. 47:305(D)(1)(r)." Thus, LGMC argues it was necessary for the Legislature to specify that all six separate statutory exemptions were included. Contrast that with the fact there is, and has always been, just the one statutory exemption for "drugs" found in La.R.S. 47:305(D)(1)(j), and it can explain the Legislature's action in not specifically incorporating the statutory exemption for "drugs" in Art. VII, § 2.2(B)(3).

LGMC also notes that in Art. VII, § 2.2(B)(2), the constitutional prohibition for "natural gas, electricity and water" was specifically limited, as compared to its statutory counterpart, to natural gas, electricity and water which was "sold directly

to the consumer for residential use." Thus, the Legislature was aware how to draft a constitutional prohibition with a limitation, but apparently chose not to do so with regard to "prescription drugs" in Art. VII, § 2.2(B)(3). Clearly, if the intent of the Legislature was to limit "prescription drugs" to just pharmaceuticals and remove medical devices from its purview it could have specifically provided so, as it did above in Art. VII, § 2.2(B)(2) with regard to natural gas, electricity and water.

LGMC also emphasizes it is not relying on what the legislature did or did not do in 2016 with the passage of Acts 25 and 26. LGMC is relying on the constitutional prohibition for "prescription drugs" in Art. VII, § 2.2(B)(3) of the Louisiana Constitution, which was enacted in 2002. Thus, it maintains the constitutional prohibition for prescription drugs was not impacted by Act 25 and 26 and remained fully in effect during the tax period in question.

We also find it erroneous that the Tax Board, in its written reasons for judgment, relied on the fact that Act 426 of the 2017 Louisiana Legislature Regular Session amended both Acts 25 and 26 of the 2016 1st Extraordinary session to specifically add "sales and purchases of medical devices used by patients under the supervision of a physician, as provided in R.S. 47:305(D)(1)(s)" to the list of preserved exemptions. The Board commented that "there would have been no need for Act 426 under [LGMC]'s reading of the 2016 enactments." The Department also noted in its brief that Act 426 was a deliberate act by the Legislature to add "the very exemption for medical devices that [LGMC] argues . . . was always within Acts 25 and 26." LGMC and other interested parties should not be punished for pursuing an obviously quicker remedy, while its legal challenges proceeded through the often time-consuming judicial process. LGMC and other interested parties' proactive measures to create a legislative fix for what it perceived as improper taxation does not mean that the applicable constitutional prohibition was unavailable during that time period or that the medical devices exemption was suspended.

11

Ultimately, the key to our resolution of this issue is the fact the Board's and Department's interpretation of the meaning of "prescription drugs" in this case results in an ***expansion of taxes*** on the general public and in favor of the taxing authority. The law is well-settled that "[t]axing statutes must be strictly construed against the taxing authority; where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is to be adopted. *Goudchaux/Maison Blanche, Inc. v. Broussard*, 590 So.2d 1159, 1161 (La.1991)." *Cleco Evangeline, LLC v. Louisiana Tax Commission*, 01-2162, p. 6 (La. 4/3/02), 813 So.2d 351, 356. Moreover, the Louisiana Supreme Court specifically stated, "[u]nless the words imposing the tax are expressly in the statute, the tax cannot be imposed. *Hibernia Nat. Bank in New Orleans* [*v. Louisiana Tax Commission*], 195 La. [43,] at 54, 196 So. [15,] at 18." *Cleco Evangeline*, 813 So.2d at 355. The confusion as to whether the term "prescription drugs" extended to "medical devices" lends itself to more than one interpretation and requires we give the construction favorable to the taxpayer. Louisiana law also mandates we are to "give harmonious effect to all acts on a subject when reasonably possible." *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 4 (La. 5/20/97), 694 So.2d 184, 186, *citing State v. Piazza*, 596 So.2d 817, 819 (La. 1992). In this case, the only statutory definition of "prescription drugs" in Louisiana has always included medical devices within its meaning. Without the Legislature expressly excluding medical devices from the purview of "prescription drugs," we find the expansion of taxes sought by the Department cannot legally be imposed. Further, the legislative history cited by LGMC as to the Stelly Plan showed a clear legislative intent to create a constitutional prohibition against the institution of temporary taxes on "prescription drugs," which historically had always included medical devices. Thus, we conclude the constitutional prohibition against taxation on "prescription drugs' found in Art. VII, § 2.2(B)(3) includes medical devices.

**DECREE**

For the reasons expressed above, we find the Tax Board erred in granting the Department's Motion for Summary Judgment. We reverse that judgment and hereby render judgment granting LGMC's Partial Motion for Summary Judgment. All costs of this appeal are assessed against the Department.

**REVERSED AND RENDERED.**