STATE OF LOUISIANA      *      NO. 2020-KA-0309

VERSUS      *

KANISHA M. BAKER      *      COURT OF APPEAL

     FOURTH CIRCUIT

     * 

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 542-789, SECTION "E"
Honorable Keva M. Landrum-Johnson, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale N. Atkins)

Leon Cannizzaro
Donna Andrieu
Irena Zajickova
Blaise C. D'Antoni
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

Donald Dorenkamp II
Jon S. McGill
THE LAW OFFICES OF JON S. MCGILL, LLC
235 Derbigny Street, Suite 100
Gretna, LA 70053

     COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND RENDERED**
**DECEMBER 2, 2020**

DNA
RLB
PAB

Palmetto Surety Corporation ("Palmetto") appeals the district court's July 17, 2019 judgment, denying its Motion and Order for Notice of Surrender of Defendant and Release from Liability ("Motion"), and granting the State of Louisiana's (the "State") Judgment of Bond Forfeiture. For the reasons set forth below, we reverse the district court's July 17, 2019 judgment and render judgment in favor of Palmetto.

## BACKGROUND AND PROCEDURAL HISTORY

On May 26, 2018, Defendant, Kanisha Baker ("Defendant"), was arrested for aggravated battery in violation of La. R.S. 14:34, theft in violation of La. R.S. 14:67(A), and simple criminal damage to property in violation of La. R.S. 14:56(A)(1). At Defendant's first appearance, the district court set her bond at $4,500.00. On May 31, 2018, Defendant posted a commercial surety bond issued by Palmetto, underwritten by Palmetto's agent #1 Bail Bonds & Recovery, in the total amount of $4,500.00.

On September 17, 2018, the State filed a bill of information charging Defendant with domestic abuse battery in violation of La. R.S. 14.35.3, aggravated battery in violation of La. R.S. 14:34, theft in violation of La. R.S. 14:67(A), and

1

simple criminal damage to property in violation of La. R.S. 14:56(A)(1). Defendant's initial arraignment was set for October 9, 2018.

On October 9, 2018, Defendant failed to appear for arraignment. The district court then reset Defendant's arraignment twice in October 2018. Defendant failed to appear for these arraignments. On November 5, 2018, Defendant's arraignment was reset for a third and final time. Defendant failed to appear. Thereafter, the district court issued an *alias capias* for Defendant, and a bond forfeiture hearing was set for November 19, 2018. At the November 19, 2018 bond forfeiture hearing, the State moved to forfeit Defendant's bond, which the district court granted. The district court also ordered that Defendant's *alias capias* remain in effect.

On December 21, 2018, the Clerk of Criminal District Court for Orleans Parish issued, via certified mail, the *Alias Capias* Certificate of Notice to Defendant and Palmetto. On February 1, 2019, Palmetto filed a Notice of Surrender with the Orleans Parish Clerk of Criminal Court attaching three Statements of Surrender[1] and a receipt of payment of the applicable fees, verifying the surrender of Defendant. The Statements of Surrender and the payment receipt were executed on December 30, 2018, by an agent of Palmetto and a representative of the Orleans Parish Sheriff's Office ("Sheriff's Office").

On June 24, 2019, a Rule to Show Cause for the Bond Forfeiture was filed by the State requesting Defendant and Palmetto show cause why Defendant's bail should not be forfeited. On July 15, 2019, Palmetto filed its Motion in Opposition to the Bond Forfeiture attaching the three Statements of Surrender and receipt of

---

[1] The three Statements of Surrender were associated with the three initial arrest charges for which Defendant posted bond.

2

payment for the surrender of Defendant as exhibits. The bond forfeiture matter came before the district court on July 17, 2019. At the close of the July 17, 2019 hearing, the district court granted the State's Judgment of Bond Forfeiture and denied Palmetto's Motion. From this ruling, Palmetto timely appeals.

## DISCUSSION

In its sole assignment of error, Palmetto argues the district court erred in granting the State's Judgment of Bond Forfeiture and denying its Motion requesting to be released of its bond obligation. Specifically, Palmetto argues that the district court erroneously expanded the requirements of La. C.Cr. P. art. 331(C) by requiring that there be proof that Defendant was booked into the Orleans Parish Justice Center (the "Justice Center") after being accepted by a Sheriff's officer. We agree.

"[B]ond forfeitures are not favored in Louisiana." *State v. Magee*, 2018-0355, p. 10 (La. App. 4 Cir. 9/4/19), 282 So.3d 271, 278 (citing *State v. Brown*, 2011-0804, p. 2 (La. App. 4 Cir. 1/11/12), 80 So.3d 1288, 1290). "If the defendant does fail to appear, the State must strictly comply with statutory provisions to obtain a judgment of bond forfeiture." *Id*.

La. C.Cr.P. art. 331(C) sets forth the procedure a surety must follow to surrender a defendant and have the bond obligation extinguished:

(1) A surety may surrender the defendant at any time. For the purpose of surrendering the defendant, the surety may arrest him. The surety shall pay a fee of twenty-five dollars to the officer charged with the defendant's detention for accepting the surrender, processing the paperwork, and giving the surety a certificate of surrender. Upon the surrender of the defendant, the officer shall retain a copy and forward a copy of the certificate of surrender to the clerk of court and the prosecuting attorney.

(2) Upon surrender of the defendant at any time prior to the expiration of one hundred eighty days after the notice of warrant for arrest

3

was sent, the surety shall be fully and finally discharged and relieved of all obligations under the bail undertaking by operation of law, without the need to file a motion or other pleading.

The issue in dispute in this case is what constitutes a valid surrender of a defendant to release a surety of its bond obligation pursuant to La. C.Cr.P. art. 331. This is a question "of statutory interpretation, which begins 'as [it] must, with the language of the statute.'" *State v. Lyles*, 2019-00203, p. 3 (La. 10/22/19), 286 So.3d 407, 409 (quoting *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995)(superseded by statute). A district court's interpretation and application of a statute is reviewed under a *de novo* standard of review. *See State v. Nellon*, 2012-1429, p. 4 (La. App. 4 Cir. 9/4/13), 124 So.3d 1115, 1118 (citing *Iles v. Ogden*, 2011-0317, p. 4 (La. App. 4 Cir. 9/5/12), 99 So.3d 1035, 1038; *Cleco Evangeline, L.L.C. v. Louisiana Tax Com'n*, 2001-2162, p. 3 (La. 4/3/02), 813 So.2d 351, 353). "'A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature.'" *Id.* (quoting Moss v. State, 2005-1963, p. 15 (La. 4/4/06), 925 So.2d 1185, 1196). "The words of the law must be given their generally prevailing meaning." *Nellon*, 2012-1429, pp. 4-5, 124 So.3d at 1118 (citing La. C.C. art. 11). "Where the language is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." *Id.* (citing La. C.C. art. 10). "Legislative intent is to be determined 'by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law.'" *Id.* (quoting *Moss v. State*, 2005-1963, p. 15 (La. 4/4/06), 925 So.2d 1185, 1196).

The State argues that the district court made an evidentiary ruling based on the evidence available to the court at the time of the Rule to Show Cause hearing, and found there was not sufficient evidence to prove that Ms. Baker was surrendered. In particular, the State asserts that the district court found that there was no evidence that the Justice Center accepted the surrender of Ms. Baker. In *State v. Kerrison*, 1997-1759, p. 1 (La. 10/17/97), 701 So.2d 1347, 1348, the Louisiana Supreme Court established that the statute governing the surrender of a defendant "does not contemplate an officer's refusal to accept surrender." Likewise, the statute does not contemplate the officer's subsequent release of a defendant without booking her into custody. La. C.Cr. P. art. 331 was amended in 2016, omitting the language from provision (C)(1) mandating that once a surety surrendered a defendant, the officer charged with the defendant's detention "**shall detain the defendant in his custody as upon the commitment.**"[2] Thus, the lack of evidence revealing that Ms. Baker was detained with the Justice Center is immaterial, and does not render the surrender of Ms. Baker ineffective.

Presently, La. C.Cr.P. art. 331(C) establishes three requirements a surety must meet to surrender a defendant and be relieved of its bond obligation: (1) the surety must surrender the defendant to the officer charged with defendant's detention; (2) the surety must pay the fee of twenty-five dollars to the officer charged with the detention of the defendant for accepting the defendant, processing paperwork, and providing a certificate of surrender; and (3) the surety must surrender the defendant within 180 days of the notice of the warrant being sent. Upon satisfaction of these requirements, the surety "shall be fully and finally

---

[2] La. C.Cr.P. art. 331 was amended in the Louisiana 2016 Regular Legislative Session. *See* BAIL, 2016 La. Sess. Law. Serv. Act 613 (S.B. 123)(WEST).

5

discharged and relieved of all obligations under the bail undertaking by operation of law, without the need to file a motion or other pleading." La. C.Cr.P. art. 331(C)(2).

Based on a *de novo* review of the record, Palmetto satisfied all three requirements set forth in La. C.Cr.P. art. 331(C). First, the record reflects that Palmetto surrendered Ms. Baker to the Justice Center and the custody of the officer charged with her detention, the Sheriff's Office. This is evidenced by the three Statements of Surrender that were executed by the agent of Palmetto and a representative of the Sheriff's Office. Secondly, the record reflects that Palmetto paid the required fee of $75.00 for the surrender—representing $25.00 for each criminal charge, the accompanying processing fee, and certificate of surrender issued for the officer's acceptance of the Defendant's detention. Palmetto was issued a receipt that was signed by a representative of the Sheriff's Office. Finally, the surrender of Ms. Baker was timely. On December 21, 2018, the *alias capias* was issued, via certified mail, to Ms. Baker and Palmetto. Ms. Baker was surrendered, on December 30, 2018, nine days later, well within the 180-day requirement set forth in the statute.

Accordingly, Palmetto effectuated a proper surrender of Ms. Baker pursuant to La. C.Cr.P. art. 331(C). Palmetto is entitled to be discharged from its bond obligation. Based on a *de novo* review of the record, the district court erred in granting the Judgment of Bond Forfeiture. Thus, we reverse the ruling of the district court granting the State's Judgment of Bond Forfeiture and denying Palmetto's Motion.

**DECREE**

For the foregoing reasons, we reverse the district court's July 17, 2019 judgment denying Palmetto's Motion requesting to be released from its bond obligations and granting the State's Judgment of Bond Forfeiture. Accordingly, we render judgment in favor of Palmetto, granting the release of its bond obligation.

**REVERSED AND RENDERED**