# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-278

PBGS, L.L.C., ET AL.

VERSUS

RHYN L. DUPLECHAIN, ASSESSOR FOR
ST. LANDRY PARISH, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 12-0170
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, Billy Howard Ezell, J. David Painter, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Cooks, J., dissents and assigns written reasons.
Keaty, J., dissents and assigns written reasons.

Lawrence P. Simon, Jr.
Liskow & Lewis, APLC
Post Office Box 52008
Lafayette, LA   70505
(337) 232-7424
COUNSEL FOR PLAINTIFFS/APPELLANTS:
     PBGS, L.L.C.
     Port Barre Investments, L.L.C., c/o Spectra Energy Corporation

**Cheryl M. Kornick**
**James C. Exnicios**
**Elisabeth Lorio Baer**
**Liskow & Lewis, APLC**
**One Shell Square, Fiftieth Floor**
**New Orleans, LA   70139-5099**
**(504) 581-7979**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **PBGS, L.L.C.**
    **Port Barre Investments, L.L.C., c/o Spectra Energy Corporation**

**Brian A. Eddington**
**8941 Jefferson Highway, Suite 200**
**Baton Rouge, LA   70809**
**(225) 924-4066**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rhyn L. Duplechain, Assessor for St. Landry Parish**

**AMY, Judge.**

The plaintiffs filed the instant suit questioning St. Landry Parish's assessment of two salt caverns as "other property" rather than "land." The defendant tax assessor filed a motion for partial summary judgment on the issue of the classification. At the hearing, the trial court rejected the plaintiffs' contention that it lacked subject matter jurisdiction and further determined that the defendant appropriately classified the salt caverns as "other property." The plaintiffs appeal. For the following reasons, we affirm.

## Factual and Procedural Background

At issue in this matter is the proper tax classification of two salt caverns located under a tract of land in St. Landry Parish owned by PBGS, L.L.C. According to the record, PBGS leases the salt caverns to Port Barre Investments, LLC c/o Spectra Energy Corp for use as underground natural gas storage facilities. In its capacity as lessee, Spectra indemnifies PBGS for its ad valorem taxes.[1] Both are parties to this matter.

This proceeding arose after the St. Landry Parish Tax Assessor, Rhyn L. Duplechin, classified the salt caverns as "other property" (taxable at 15% of the fair market valuation) in its 2011 assessment. PBGS and Spectra have contested that valuation, arguing that the salt caverns must, instead, be classified as "land"

---

[1] In the petition instituting this matter, the PBGS and Spectra alleged:

7.
Spectra is engaged in the oil and gas business in St. Landry Parish, Louisiana. Spectra leases the Property from PBGS and uses the salt caverns as underground natural gas storage facilities.

8.
As lessee of the Property, Spectra indemnifies the Taxpayer by paying its ad valorem taxes and, as such, is also a proper plaintiff in this suit for refund to collect tax paid under protest.

(taxable at 10% of the fair market value). As revealed in the record, PBGS and Spectra appealed the assessment with the St. Landry Board of Review, which upheld the valuation.

PBGS and Spectra thereafter pursued two actions. One action, styled as an appeal of the Board of Review's decision, was lodged with the Louisiana Tax Commission. While that matter was pending,[2] Spectra paid the 2011 taxes assessed and designated a portion of those taxes as having been paid under protest. In a letter addressed to Sheriff Bobby J. Guidroz, in his capacity as Sheriff and Ex-Officio Tax Collector, Spectra informed the Sheriff of its correctness challenge to the Louisiana Tax Commission pursuant to La.R.S. 47:2134(B)(2)(b). Additionally, Spectra informed Sheriff Guidroz that "because the disputed issues giving rise to the partial payment under protest . . . may constitute a legality challenge" it intended to file for recovery of the protested taxes under La.R.S. 47:2134(C).

Subsequently, PBGS and Spectra filed this matter in the Twenty-Seventh Judicial District Court as a "Petition for Refund of Tax Paid Under Protest." As pertinent to this proceeding,[3] the plaintiffs contested the 2011 classification of the salt caverns as "other property" (taxable at 15% of the fair market valuation) rather than as "land" (taxable at 10% of the fair market value). The plaintiffs named Assessor Duplechain and Sheriff Guidroz as defendants.

---

[2] In their reply brief to this court, the plaintiffs explain that the Louisiana Tax Commission has rendered its decision. The plaintiffs argue that it is that opinion which must be appealed. They attach a copy of the Louisiana Tax Commission ruling. However, that ruling, obviously released after the perfecting of this appeal, is not contained in this record, but is merely attached to the plaintiffs' reply brief. We do not now consider that ruling or disturb any ongoing proceedings pending elsewhere.

[3] The petition also contested the valuation of certain active oil, gas and other wells. However, that aspect of the plaintiffs' petition is not now at issue.

In their petition, the plaintiffs noted the appeal to the St. Landry Parish Board of Review, the proceeding before the Louisiana Tax Commission, and the payment made under protest. As far as the proceeding in the trial court, the plaintiffs asserted that they were availing themselves of the provisions of La.R.S. 47:2134(C) in order to protest "the attempt by St. Landry Parish to levy overstated and illegal taxes on the Property." They further stated that:

> In the alternative, and in the event that it is determined that the claims pending before the Louisiana Tax Commission do not constitute a correctness challenge pursuant to [La.R.S.] 47:2134, Plaintiffs are filing this petition pursuant to [La.R.S.] 47:2134(C) because the taxes paid under protest levied by St. Landry Parish constitute illegal taxes and further, Plaintiffs are protesting the method of enforcement of these illegal taxes.

The plaintiffs alleged that La.Const. art. 7, § 18(B) and the Louisiana Civil Code dictate that salt caverns are properly classified as "land" subject to the 10% of fair market valuation for ad valorem tax purposes thereby rendering the assessment of the salt caverns as "other property" "both incorrect and illegal."

The petition's prayer asked the trial court to order the assessor to adjust the assessment of the property, classifying the salt caverns as "land." The petition also sought the return of the taxes paid under protest.

In response, Assessor Duplechain filed a motion for partial summary judgment on the issue of classification of the salt caverns as "other property" rather than "land" for taxation assessment purposes. In opposition, the plaintiffs contested whether the trial court had subject matter jurisdiction to consider the issue. The plaintiffs pointed to their matter pending before the Louisiana Tax Commission and argued that their claim was, in fact, merely a correctness challenge and was, therefore, only properly resolved by that administrative proceeding. On the merits, the plaintiffs argued that the property at issue

3

constituted naturally occurring formations and could, therefore, only be classified as "land" for taxation purposes.

After argument, the trial court concluded that it had subject matter jurisdiction and, ultimately, rendered judgment in favor of the Assessor concluding that: "Assessor Duplechain properly classified the underground natural gas storage caverns that are the subject of this suit as "other property" for purposes of ad valorem taxation[.]" The trial court certified the matter as a final judgment and determined that there was no just reason for delay.

The plaintiffs appeal, asserting that the trial court erred in: 1) improperly certifying a partial summary judgment as a final, appealable judgment; 2) asserting subject matter jurisdiction; and 3) in rendering judgment in favor of the Assessor on the merits.

**Discussion**

*Final Judgment*

The plaintiffs first contest the trial court's certification of the partial summary judgment as a final judgment for appeal purposes. They point out that, although the trial court designated the matter as a final appealable judgment pursuant to La.Code Civ.P. art. 1915(B), the trial court did not provide reasons for its finding that there was no just reason for delay. In application of the factors of *R.J. Messinger, Inc. v. Rosenblum*, 04-1664 (La. 3/2/05), 894 So.2d 1113, the plaintiffs allege this matter should not have been certified as appealable in light of their pending matter before the Louisiana Tax Commission and the fact that an issue regarding the assessment of active service wells was not resolved by the partial summary judgment.

4

We find no merit in the plaintiffs' argument on this point. Louisiana Code of Civil Procedure Article 1915(B)(1) (emphasis added) provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment *unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.*

In the absence of the trial court's express reasons underlying its determination "that there is no just reason for delay," this court evaluates the appropriateness of that designation. *See Messinger*, 894 So.2d 1113. While not an exclusive list, the following factors may be used in a court's consideration of whether a partial judgment should be certified as appealable:

> 1) The relationship between the adjudicated and unadjudicated claims;
>
> 2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
>
> 3) The possibility that the reviewing court might be obliged to consider the issue a second time; and
>
> 4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity and competing claims, expense, and the like.

*Messinger*, 894 So.2d at 1122 (quoting *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)). "However, the overriding inquiry for the trial court is whether there is no just reason for delay. Courts of appeal, when conducting *de novo* review in matters where the trial court fails to give explicit reasons for certification, can consider these same criteria." *Id.* at 1122-23.

In consideration of these factors, we do not disturb the trial court's finding that this matter was a final judgment for purposes of appeal. Rather, the

adjudicated claim regarding the classification of the salt caverns as "other property" rather than "land" obviously differs from the petition's unresolved issue of whether the Assessor improperly "used alternative methods from those provided in § 907 of the Louisiana Tax Commission Rules and Regulations to arrive at the assessed value of the active service wells on the Property." Additionally, because the discrete issue of the classification of the salt caverns was resolved by the trial court's ruling, it is difficult to see how the need for review could be "mooted by future developments in the trial court" or how this issue, once resolved on appeal, would be considered again in this proceeding. *See Messinger*, 894 So.2d 1113. Finally, there are no miscellaneous factors that would give cause for delay. While the plaintiffs suggest that their previously-filed matter before the Louisiana Tax Commission will ultimately be appealed, we find no reason to delay the instant matter over which the trial court exercised original subject matter jurisdiction.

In sum, we find that the trial court properly designated the judgment as a final judgment for purposes of appeal.

This assignment lacks merit.

*Subject Matter Jurisdiction*

Although the plaintiffs filed the petition instituting this matter, they assert that the trial court erred in concluding that it had subject matter jurisdiction to hear the motion for summary judgment. Rather, the plaintiffs contend that their claim actually contests the description of the property as "other property" rather than "land" and that it is, therefore, a correctness challenge to be determined by the Louisiana Tax Commission. The Assessor maintains, instead, that the trial court appropriately exercised subject matter jurisdiction as the plaintiffs' petition advanced a legality claim.

6

The classification of property for tax assessment purposes is provided for by Louisiana Constitution Article 7, § 18, in pertinent part, as follows:

Section 18. **(A) Assessments.** Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C) and (G), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.

**(B) Classification.** The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

| Classifications | Percentages |
| --- | --- |
| 1. Land | 10% |
| . . . . | |
| 5. Other property | 15% |

The legislature may enact laws defining electric cooperative properties and public service properties.

**(C) Use Value.** Bona fide agricultural, horticultural, marsh, and timber lands, as defined by general law, shall be assessed for tax purposes at ten percent of use value rather than fair market value. The legislature may provide by law similarly for buildings of historic architectural importance.

**(D) Valuation.** Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.

This fundamental inquiry as to subject matter jurisdiction requires consideration of Louisiana's constitutional and statutory framework for challenges to property tax assessments. As explained in *Triangle Marine, Inc. v. Savoie*, 95-

2873, p. 3 (La. 10/15/96), 681 So.2d 937, 939, this "two-track procedure" provides for both challenges to the "correctness" of a tax assessment and for challenges to the "legality" of the tax levied. The "nature of the challenge" dictates the entity that hears and resolves such disputes. *Gisclair v. Louisiana Tax Comm'n*, 09-0007, p. 5 (La. 6/26/09), 16 So.3d 1132, 1135.

With regard to the correctness challenge, Louisiana Const. art. 7, § 18(E) (emphasis added) provides that:

> The *correctness of assessments* by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.

Thus, in a correctness challenge, the trial court is granted only appellate jurisdiction.

However, Louisiana Constitution Article 7, §3(A) (emphasis added) dictates that: "The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery *of an illegal tax* paid by a taxpayer." Thus, as statutorily provided for, a "legality" challenge may be filed directly in the district court. *Triangle Marine*, 681 So.2d 937. Moreover, and specifically with regard to suits to recover taxes paid under protest, La.R.S. 47:2134(D) (emphasis added) provides:

> The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of all questions arising in connection with a correctness challenge or the enforcement of the rights respecting the legality of any tax accrued or accruing or the method of enforcement thereof. *The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action at law in the state or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, or in violation of any act of the Congress of the United States, the Constitution of the United States, or the*

*constitution of the state.* The portion of the taxes which is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of such suit shall not be made subject to the protest.

As stated above, it was the plaintiffs' petition that instituted this matter in the district court in St. Landry Parish. Yet, it is the plaintiffs that now contest the trial court's subject matter jurisdiction to hear the matter that they placed before it. However, review of the petition, itself, indicates that the plaintiffs framed their objection to the property tax assessment in repeated terms of unconstitutionality and illegality. At its core, the plaintiffs' petition alleges that the tax assessor classified the salt caverns as "other property" in violation of La.Const. art. 7, § 18(B). While the plaintiffs noted their corresponding correctness challenge filed with the Louisiana Tax Commission, the plaintiffs specifically referred to the instant matter as pursuit of a legal challenge. In this regard, the petition states that:

19.
In the payment under protest letter, the Taxpayer notified the Sheriff that, in addition to the correctness challenge filed with the Louisiana Tax Commission, Taxpayer also would file a legality challenge suit seeking the recovery of the ad valorem taxes paid under protest.

20.
By copy of the payment under protest letter addressed to the Assessor and the Louisiana Tax Commission, the Taxpayer notified the Assessor and Mr. Peters that it had paid the Tax Bill under protest and that it intended to file a legality challenge suit seeking recovery of the taxes paid under protest.

21.
Pursuant to the provisions of [La.R.S.] § 47:2134(C),[4] Plaintiffs are protesting the attempt by St. Landry Parish to levy

---

[4] Louisiana Revised Statutes 47:2134 provides:

C. (1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the

overstated and illegal taxes on the Property. In the alternative, and in the event that it is determined that the claims pending before the Louisiana Tax Commission do not constitute a correctness challenge pursuant to [La.R.S.] 47:2134, Plaintiffs are filing this petition pursuant to [La.R.S.] § 47:2134(C) because the taxes paid under protest levied by St. Landry Parish constitute illegal taxes and further, Plaintiffs are protesting the method of enforcement of these illegal taxes.

In successive paragraphs, the plaintiffs make repeated claims of illegality in the imposition and enforcement of the 2011 assessment and the "misclassif[ication]" of the salt caverns as "other property" contrary to La.Const. art. 7, § 18(B). The plaintiffs further assert that "controlling Louisiana tax law" and "the Louisiana Civil Code" dictate the classification of the salt caverns as "land" rather than "other property."

In this light, it is difficult to see how the plaintiffs' claim does not pose a legality challenge. Rather, the plaintiffs lodged a direct challenge to the constitutionality and legality of the tax, as assessed. Further, the petition makes a

---

recovery of the protested tax. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.

(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.

(3) In any such legality challenge suit, service of process upon the officer or officers responsible for collecting the tax, the assessor or assessors for the parish or district, or parishes or districts in which the property is located, and the Louisiana Tax Commission shall be sufficient service, and these parties shall be the sole necessary and proper party defendants in any such suit.

(4) If the taxpayer prevails, the collecting officer or officers shall refund such amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the collecting officer or officers to the date of the refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date the taxes are paid.

separate and specific claim as to the "method of enforcement of these illegal taxes." *See* La.R.S. 47:2134(D).

Further, and in consideration of jurisprudence distinguishing a correctness challenge from a legality challenge, we, again, conclude that the plaintiffs' challenge to the constitutionality and legality of the assessment must be taken at face value for jurisdictional purposes. In *Gisclair*, 16 So.3d at 1136, the supreme court explained that: "[C]orrectness challenges are directed at issues of regularity or correctness of the assessment, such as over-valuation and misdescription, while legality challenges are directed at issues involving claims that the assessment is void for radical defects that bring into question the existence of any valid assessment." Subsequently, in *Triangle Marine*, 681 So.2d 937, the supreme court explained that a legality challenge also encompasses those claims questioning the constitutionality of the administration of the tax. Specifically, the supreme court stated that "a challenge to a tax assessment need not contest the validity of the ad valorem tax *itself* to constitute a legality challenge. Rather, an 'as applied' challenge, such as the one asserted by the taxpayers herein, can be a legality challenge." *Id.* at 941. Further, in *ANR Pipeline Co. v. Louisiana Tax Commission*, 02-1479 (La. 7/2/03), 851 So.2d 1145, the supreme court explained that the Louisiana Tax Commission, an administrative agency, lacks the subject matter jurisdiction over constitutional questions. Instead, and because the district court was observed to have original jurisdiction to rule on issues of constitutionality, the supreme court concluded that "all taxpayers . . . may file protests based on constitutional challenges directly in district court." *Id.* at 1151.

Reported jurisprudence is of limited guidance to the court on the question of whether a claim of "misclassification" under La.Const. art. 7, §18(B) is a

11

correctness challenge or whether it is a legality challenge. The plaintiffs direct this court to *Cleco Evangeline, LLC v. Louisiana Tax Commission*, 01-2162 (La. 4/3/02), 813 So.2d 351, wherein the Louisiana Tax Commission first considered the question of whether certain property was properly classified as "public service property" before the question proceeded through the courts. However, upon analysis, *Cleco* is ultimately not helpful on the issue of subject matter jurisdiction. Instead, the matter seems to have originated in the Louisiana Tax Commission and passed to the courts without comment as subject matter jurisdiction was not specifically addressed by the courts. *Id.* Further, *Cleco* predated the supreme court's decision in *ANR*, 851 So.2d at 1151, which, as explained above, provided that "all taxpayers . . . may file protests based on constitutional challenges directly in district court."

Furthermore, to the extent that there is limited assistance in the jurisprudence, it is apparent that the claim in this case is distinct from the type of correctness challenge involving a challenge to a "value" or a method used to arrive at "value." *Gisclair*, 16 So.3d 1132. In fact, this case is not at all about value.

Rather, the essential claims of the plaintiffs' petition is that La.Const. art. 7, § 18(B) ensures that the plaintiffs' property is to be classified as "land" and subject to taxation at a rate of 10% of fair market value. The plaintiffs argue that, contrary to that constitutional provision, the Assessor classified their property as "other property" and subjected it to a taxation rate of 15% of fair market value. That classification, it must follow, was unconstitutional as applied to them.

Given the essential qualities of this pointed claim lodged by the plaintiffs, we find no error in the trial court's determination that it had original jurisdiction over this matter. Accordingly, we turn to the merits of the plaintiffs' claim.

12

*Classification*

As related above, the plaintiffs question the classification of the salt caverns as "other property" rather than "land." In particular, the plaintiffs assert that the Assessor is attempting "to characterize holes in land – the 'salt caverns' – as a separate 'improvement' rather than as a part of the land." The plaintiffs contend that such a characterization is misleading and that "[a]ll that is at issue in this case is the salt dome itself, which is a naturally occurring geologic feature that now has holes – the 'salt caverns' – in it." The record, however, indicates otherwise.

While it is obvious that the original salt mass was naturally occurring, it is equally clear that the existing salt caverns were man-made. In opposition to the motion for summary judgment, the plaintiffs submitted the deposition testimony of Spectra representative and petroleum engineer, Scott Rouze. Mr. Rouze denied that the two salt caverns exist due to a naturally-occurring void in the underground salt structure. Rather, caverns such as these are created following a period of planning, permitting by various governmental entities, and laborious development of the once solid salt mass. This process, as described by Mr. Rouze, involves the drilling of the mass, the injection of freshwater in order to dissolve the salt mass, and the placement of a multi-purpose infrastructure of casing into the cavern. The process of creating the cavern involves various engineering specialties and is lengthy, lasting approximately two-to-three years as described by Mr. Rouze. And, in addition, it is a costly process. According to Mr. Rouze, the creation of this type of facility could cost approximately $90 million.[5] As a result of the process,

---

[5] Mr. Rouze testified that the estimated costs represent "the cavern development costs, the labor costs, the associated maintenance costs, and the freshwater - - producing the freshwater so you can pump it and disposing the brine that has come back out of the cavern. A lot of that is electricity intensive, obviously pump maintenance and administrative and human costs."

however, each cavern has a volumetric capacity of six-ten million barrels[6] of natural gas.

Given these facts, supplied by the plaintiffs, it is apparent that the construction and commercial development of these caverns is quite distinct from the original naturally-occurring feature of the property. Further, the improvement of the property for commercial purposes is continuing with the development of two additional caverns on the property as described by Mr. Rouze. It is clear by the breadth, scope, and commercial purpose of the salt cavern's creation from the original salt mass that a commercial improvement has resulted. Both parties state in their brief to this court that commercial improvements are included within the "other property" classification. *Citing*, *Cleco*, 813 So.2d 351. In this regard, the record supports the trial court's determination that "Assessor Duplechain properly classified the underground natural gas storage caverns that are the subject of this suit as "other property" for purposes of ad valorem taxation[.]"

On a final note, we recognize that the plaintiffs assert that La.Civ.Code art. 490 prohibits recognition of a distinct part of the "land" for separate taxation. However, Article 490 only provides that:

> Unless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above or under it.
>
> The owner may make works on, above, or below the land as he pleases, and draw all the advantages that accrue from them, unless he is restrained by law or by rights of others.

---

While we recognize Mr. Rouze testified regarding the development of a salt cavern facility, in general, since Spectra did not develop the property now at issue, his description illuminates the Assessor's view of that facility as an improvement.

[6] Mr. Rouze explained that, in the context of natural gas storage, each barrel is approximately forty-two gallons.

Although the plaintiffs conflate the question of ownership with their arguments relating to the determination of what constitutes "other property" under La.Const. art. 7, § 18(B), no question of ownership of the salt caverns has been posed by this petition. Spectra merely indemnifies PBGS for the ad valorem taxation pursuant to their lessor/lessee relationship. As correctly recognized by the trial court at the hearing, ownership is distinct from classification of taxation. It is not apparent that the ability to control everything above and below the property as described in La.Civ.Code art. 490 prohibits a classification of works/improvements thereon as "other property" rather than "land." Although the plaintiffs reference La.Civ.Code art. 493[7] and suggest that classification of the salt caverns as "other property" indicates that it is being treated as capable of separate ownership, apart from the ownership of the land, we reject that argument as inapplicable to the narrow taxation question before the court.

This assignment lacks merit.

---

[7] Louisiana Civil Code Article 493 provides, in part: "Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent."

*See also* La.Civ.Code art. 491 (which provides that: "Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located."); La.Civ.Code art. 493.1 (which provides that: "Things incorporated in or attached to an immovable so as to become its component parts under Article 465 and 466 belong to the owner of the immovable.").

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellants, PBGS, L.L.C. and Port Barre Investments, LLC, c/o Spectra Energy Corp.

**AFFIRMED.**

**STATE OF LOUISIANA**
**COURT OF APPEAL**
**THIRD CIRCUIT**
**STATE OF LOUISIANA**

**13-278**

**PBGS, LLC**
**VERSUS**
**RHYN L. DUPLECHAIN, ASSESSOR FOR**
**ST. LANDRY PARISH, ET AL**

**Cooks, J., Dissents.**

I join Judge Keaty and write further to express that the majority position is not only out the box, it is legally defective.

PBGS, L.L.C., ET AL.

VERSUS

RHYN L. DUPLECHAIN, ASSESSOR FOR
ST. LANDRY PARISH, ET AL.


KEATY, Judge, dissenting.


In my view, the trial court lacked subject matter jurisdiction to hear PBGS' appeal because it amounted to a classic correctness challenge that must first be brought before the Louisiana Tax Commission. Accordingly, I would vacate the trial court judgment and remand this matter to the trial court to proceed in accordance with La.Const. art. 7, § 18(E) and La.R.S. 47:1998.