# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-512

**NORTHWESTERN LOUISIANA CANCER CENTER, LLC, ET AL.**

**VERSUS**

**LOUISIANA TAX COMMISSION, ET AL.**

**********

APPEAL FROM THE
LOUISIANA BOARD OF TAX APPEALS
TAX DIVISION, NO. L01810
HONORABLE CADE R. COLE, LOCAL TAX JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

**REVERSED AND REMANDED.**

**David R. Cassidy**
**Gould Frey**
**Breazeale, Sachse & Wilson, LLP**
**P. O. Box 3197**
**Baton Rouge, LA. 70821-3197**
**(225) 387-4000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Natchitoches Regional Medical Center**
**Northwestern Louisiana Cancer Center, LLC**

**Brian A. Eddington**
**Attorney at Law**
**2111 Quail Run Drive**
**Baton Rouge, LA. 70808**
**(225) 924-4066**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Timothy Page, Natchitoches Tax Assessor**

**Robert Kennedy, Jr.**
**Cook, Yancey, King & Galloway, PLC**
**P. O. Box 22260**
**Shreveport, LA. 71120-2260**
**(318) 221-6277**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Stuart Wright, Sheriff of Natchitoches Parish**

**Franklin "Drew" Hoffmann**
**Faircloth, Melton, Bash & Green, LLC**
**9026 Jefferson Highway, Building 6, Suite 600**
**Baton Rouge, LA. 70809**
**(225) 343-9535**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Hon. Lawrence E. Chehardy, Chairman**
**Louisiana Tax Commission**

**ORTEGO, Judge.**

In this property tax case, the taxpayers, a hospital service district and its subsidiary, filed a claim under La.R.S. 47:2132(D) with the Louisiana Tax Commission for a refund of property taxes it erroneously paid. According to taxpayers, at the time of the property tax payment, the hospital service district failed to recognize that the subsidiary's property was statutorily exempt from property taxes.

The Natchitoches Parish Assessor ("Assessor") opined to the Louisiana Tax Commission ("LTC") that no refund was due to the taxpayers. Based on the Assessor's opinion, the LTC found that it did not have jurisdiction over taxpayers' refund claims. This was based on its interpretation of La.R.S. 47:2132(A) that an assessor must first approve a taxpayer's claim for the refund prior to the LTC considering the merits of a taxpayer's refund claim. Taxpayers appealed to the Board of Tax Appeals ("BTA"), which found that the taxpayers' claim was a legality challenge. The BTA ruled that La.R.S. 47:2132 does not provide an alternative procedure to a legality challenge properly adjudicated pursuant to the procedure outlined in La.R.S. 47:2134. Given that a legality challenge under La.R.S. 47:2134 has the prerequisites of paying the tax under protest and filing suit within thirty days, neither of which the taxpayers had done, the BTA found that taxpayers had no right of action. Thus, the BTA dismissed taxpayers' claim for refund.

## FACTS AND PROCEDURAL HISTORY:

Northwestern Louisiana Cancer Center, LLC ("NLCC") was formed in 2005, to provide outpatient medical oncology services therapy to patients in Natchitoches, Winn, and Sabine Parishes. Natchitoches Parish Hospital Service District ("NHSD") operates under the name Natchitoches Regional Medical Center and was an original member of NLCC. In August 2021, NHSD purchased the other

members' interests in NLCC. At that time, NHSD leased all of NLCC's assets, consisting of medical equipment and a building.

The controversy in this case involves the 2022 tax year. For that tax year, Assessor *erroneously* assessed ad valorem taxes on this statutorily exempt property belonging to NLCC, and the Sheriff of Natchitoches Parish issued property tax bills to NLCC totaling $85,596.01. In January of 2023, NHSD paid the property taxes levied on NLCC.

On April 15, 2023, NHSD filed a claim with the LTC for refund of those ad valorem taxes paid in error to the parish and city pursuant to La.R.S. 47:2132. NHSD based its claim on La.Const. art. 7, § 21(A) as NLCC is a public entity, a political subdivision of the state, and, as such, the property was exempt as a public entity's property used for public purposes. Thereafter, NLCC joined the claim filed with the LTC. (NHSD and NLCC hereinafter referred to collectively as "Taxpayers.")

LTC consulted with Assessor, who responded/opined that LTC did not have jurisdiction over Taxpayers' claim as it was a legality challenge subject to the exclusive jurisdiction of the courts. To support the position, Assessor cited *New Orleans Riverwalk Marketplace, LLC v. Louisiana Tax Commission*, 17-968 (La.App. 4 Cir. 4/30/18), 243 So.3d 1070, *writ denied*, 18-889 (La. 9/28/18), 252 So.3d 925. LTC then rejected Taxpayers' claim based on its review of La.R.S. 47:2132 and ruled that it had no jurisdiction.

Taxpayers appealed to the BTA to assert its claim again based on La.Const. art. 7, § 21(A). Assessor responded by raising the dilatory exception of improper cumulation.

On February 8, 2024, the improper cumulation exception was brought for a hearing before the BTA. On March 14, 2024, the BTA found that Taxpayers' claim

2

was a legality challenge and La.R.S. 47:2132 does not provide an alternative procedure to La.R.S. 47:2134, which requires Taxpayers to pay the taxes in dispute under protest and file suit for their recovery within thirty days. Further, the BTA found that La.R.S. 47:2132(D) does not provide a means to invoke its original jurisdiction over a legality challenge. Because Taxpayers did not satisfy the prerequisites under La.R.S. 47:2134 or cannot bring a legality challenge under La.R.S. 47:2132(D), the BTA converted the exception of improper cumulation to an exception of no right of action and dismissed taxpayers' claim, granting that exception.

Taxpayers appeal. They raise one assignment of error.

## STANDARD OF REVIEW:

If no evidence is introduced either in support of or to controvert the objection raised, the determination of whether a plaintiff has a right to bring an action raises a question of law and is reviewed de novo. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La. 10/25/11), 79 So.3d 246.

## DISCUSSION OF THE MERITS:

In its sole assignment of error, Taxpayers contend that the BTA erred in holding that they had no right of action for a refund claim under La.R.S. 47:2132 or La.R.S. 47:2134. According to Taxpayers, they had a right of action under La.R.S. 47:2132 as they paid the 2022 taxes erroneously, and if affirmed, the BTA's holding would render La.R.S. 47:2132 meaningless.

*No Evidence Introduction - No Right of Action; Correctness of Legality Challenge*

All well pleaded facts in the petition must be taken as true if they were necessarily obtained from the allegations contained in the petition. *Eagle Pipe*, 79 So.3d 246.

3

[A]n action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. By filing a peremptory exception of no right of action, a defendant challenges whether a plaintiff has such a real and actual interest in the action. La. C.C.P. art. 927(A)(6). At the hearing on the exception of no right of action, the exception may be submitted on the pleadings, or evidence may be introduced either in support of or to controvert the objection raised when the grounds thereof do not appear from the petition. La. C.C.P. art. 931.

"The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit." *Hood v. Cotter*, 2008-0215, p. 17 (La.12/2/08), 5 So.3d 819, 829. An appellate court reviewing a lower court's ruling on an exception of no right of action should focus on whether the particular plaintiff has a right to bring the suit and is a member of the class of persons that has a legal interest in the subject matter of the litigation, assuming the petition states a valid cause of action for some person. *Id.*; *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612, p. 6-7 (La.3/17/06), 929 So.2d 1211, 1217; *Turner v. Busby*, 2003-3444, p. 4 (La.9/9/04), 883 So.2d 412, 415-416; *Reese v. State, Dept. of Public Safety and Corrections*, 2003-1615, p. 3 (La.2/20/04), 866 So.2d 244, 246.

*Id.* at 256.

Thus, if evidence is not introduced at a hearing, the petition's allegations, considered with applicable jurisprudence, determine whether a claim is a correctness or legality challenge. *Gisclair v. La. Tax Comm'n*, 09-07 (La. 6/26/09), 16 So.3d 1132. When an appellate record contains no reviewable evidence relative to whether the claim is a correctness or legality challenge, the factual allegations of the petition must be accepted as true. *Id.* Here, as evidence was not introduced at the hearing, all well-pleaded facts in Taxpayers' petition must be taken as true if they were necessarily obtained from the allegations in the petition.

*Assumptions for Adjudication*

Here, we are to assume that Taxpayers' petition states a valid right of action for some person. Then, based on the facts pled in the petition, we are to determine whether Taxpayers are granted a right of action against Assessor. Based on the allegations of the petition, we take as true that the property in controversy was owned

4

by a public entity, who was using its public property for public purposes in 2022. "Public lands and other public property used for public purposes" are "exempt from ad valorem taxation[.]" La.Const. Art. 7, § 21(A).

In 2022, Assessor erroneously assessed said public-exempt property belonging to Taxpayers, and the Sheriff of Natchitoches Parish issued tax bills to Taxpayers totaling $85,596.01 on that property. In January of 2023, Taxpayers paid the property taxes levied. Taxpayers did not pay these taxes under protest, nor did they file a legality challenge under La.R.S. 47:2134(C) within thirty days of paying those taxes. Rather, within three years of paying the taxes, Taxpayers filed a claim for a refund under La.R.S. 47:2132(D), and the allegations in the petition indicate that Taxpayers erroneously paid those taxes assessed in 2022, as, unbeknownst to Taxpayer, the property assessed was exempt from taxation.

*Statutory Interpretation of La.R.S. 47:2132*

Taxpayers argue that their erroneous payment of the 2022 taxes entitles them to use the procedure outlined in La.R.S. 47:2132. As such, we are to interpret La.R.S. 47:2132 to determine whether Taxpayers have a right of action under that statute.

Louisiana Revised Statutes 47:2132 has multiple provisions, several of which are not relevant to this appeal. Thus, we will only address the language in the statute pertinent to this appeal.

As the Louisiana Supreme Court explained in *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 27 (citations omitted), we note the following:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of

5

legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.

At the outset when interpretating a statute, we first look to the language of the statute. *Theriot v. Midland Risk Insurance Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184. "When a law is clear and unambiguous *and its application does not lead to absurd consequences*, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9 (emphasis added).

"When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La.Civ.Code art. 12. Therefore, we presume that the Legislature enacts each statute deliberately and fully aware of existing laws involving the same subject, and their language should be interpreted assuming legislative knowledge of the impact their language has on their acts with that legislative purpose in view.

"Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13. Therefore, per La.Civ.Code art. 13, courts have a duty, if possible, to adopt a construction of a statute which harmonizes and reconciles it with other provisions dealing with the same subject matter.

Louisiana Revised Statutes 47:2132(A)(1) provides, in part, as follows: "any person who has a claim against a political subdivision for ad valorem taxes erroneously paid into the funds of that political subdivision may present the claim to the Louisiana Tax Commission within three years of the date of the payment[.]"

6

Here, Taxpayers alleged they erroneously paid taxes to Assessor, and filed their claim within three years before LTC. Accordingly, we find Taxpayers have complied with this first provision of La.R.S. 47:2132(A)(1).

Next, under La.R.S. 47:2132(A)(1), the tax commission consults with the assessor. Here, there is no dispute that LTC consulted with Assessor. Next, La.R.S. 47:2132(A)(1) provides, "after that assessor advises the tax commission that a refund is due the claimant, tax commission shall duly examine the merits and correctness of each claim presented to it and shall make a determination thereon within thirty days after receipt of the claim." This language could be interpreted as the assessor *must* advise the tax commission that a refund is due prior to the tax commission even examining the merits of the claim.

Here, LTC denied Taxpayer's claim in June of 2023, without evidence submission, argument presentation, or a hearing of any kind. It is not clear from the record whether LTC based its denial on a finding that it cannot consider Taxpayers' claim without Assessor approval or on Assessor's position, which LTC attached to its letter denying Taxpayers' claim.

Assessor's position is that Taxpayers' claim is a legality challenge that can only be properly considered under La.R.S. 47:2134(C), which provides and sets out the prerequisites for challenging the legality of a disputed tax payment.

On appeal, the BTA found that LTC's position was that it could not consider Taxpayer's claim without Assessor's approval. Regarding approval of a refund by an assessor prior to LTC adjudicating a claim, we acknowledge that the language of La.R.S. 47:2132(A) could be considered clear and unambiguous. However, under La.Civ.Code art. 9, the interpretation of a statute's language does not end if the language is clear and unambiguous. The interpretation of that language must "not lead to absurd consequences." *Id.*

7

One can envision a situation wherein an assessor's approval of a refund occurs and LTC could then adjudicate the amount of that refund. However, we cannot envision or interpret the legislature's intent to empower an assessor to automatically deny a forum for a taxpayer's refund claim simply by opining to LTC that no refund is due. An assessor is an adverse party to a taxpayer seeking a refund under La.R.S. 47:2132. Therefore, an interpretation that La.R.S. 47:2132 requires or mandates an assessor to first approve a refund prior to allowing any adjudication by LTC of a taxpayer's appeal would lead to an absurd consequence.

LTC is a state agency whose duties include deciding the merits of tax appeal cases. La.R.S. 47:1831; La.R.S. 47:1989. Interpreting La.R.S. 47:2132 as proposed by Assessor would negate a taxpayer's statutory right to have LTC "examine the merits and correctness of each claim presented to it" or to "make a determination thereon." That interpretation and result would be an absurd consequence and contrary to the legislative intent of La.R.S. 47:2132(A)(1). Thus, we find the language in La.R.S. 2132(A)(1) invoking LTC'S adjudication of the claim would be rendered superfluous by an interpretation requiring prior assessor approval.

To provide further interpretation when such absurd consequences occur, the Supreme Court has stated:

> [W]e rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193, p. 10 (La. 1/19/11), 56 So.3d 181, 187-88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

*Borcik v. Crosby Tugs, L.L.C.*, 16-1372, pp. 5 (La. 5/3/17), 222 So.3d 672, 675.

Accordingly, our interpretation of La.R.S. 47:2132(A)(1) that best conforms with the purpose and intent of the law is that it does not necessitate an assessor's

approval of a taxpayer's claim for a refund prior to LTC's adjudication of the claim. We find this interpretation best conforms with the purpose of the law, i.e. to "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." La.Const. Art. 7, § 3(A). Presuming that when the Legislature enacted La.R.S. 47:2132(A)(1) it was fully aware of laws involving the same subject, and the knowledge of the impact their language has with their purpose in view, we interpret La.R.S. 47:2132(A)(1) to simply require LTC to acquire an assessor's position on a refund claim prior to examining the merits and correctness of that claim under the required time frame of the statute.

Having found nothing that prevents Taxpayers from asserting a right of action under La.R.S. 47:2132(A)(1), we now consider Taxpayers' appeal to the BTA under La.R.S. 47:2132(D).

Louisiana Revised Statutes 47:2132(D) states:

An action of the assessor or of the tax commission rejecting or refusing to approve any claim made under the provisions of this Section may be appealed by means of ordinary proceedings to the Board of Tax Appeals or to the district court having jurisdiction where the property which is the subject of the claim is located.

Here, Taxpayers' refund claim was rejected by Assessor. Taxpayers then filed a refund claim with LTC, who also rejected their claim. Taxpayers then appealed that LTC's rejection to the BTA. A review of the record shows that the Taxpayers' course of action throughout this administrative review and litigation followed the clear language of La.R.S. 47:2132(D).

Therefore, we find Taxpayers have properly followed the procedure outlined in La.R.S. 47:2132(D) in their appeal of its claim for refund to the BTA. Further, we find that there is nothing in the language of La.R.S. 47:2132(D) that prevents Taxpayers from appealing LTC's rejection of their claim to the BTA.

*Availability to Taxpayer of La.R.S. 47:2132 versus La.R.S. 47:2134*

Having found that Taxpayers followed the proper procedure pursuant to the language of La.R.S. 47:2132(D), the question is now whether that procedure was available to Taxpayers' refund claim. Thus, it becomes incumbent on this Court to determine whether Taxpayers' petition invokes a basis for their entitlement to the procedure outlined in La.R.S. 47:2132. *Gisclair*, 16 So.3d 1132.

"Louisiana constitutional and statutory law formulates a two-track procedure a property owner must adhere to in challenging property tax assessments. One regime encompasses challenges to the 'correctness of assessments by the assessor and the other covers challenges to the legality of the tax levied." *Triangle Marine, Inc. v. Savoie*, 95-2873, p. 3 (La. 10/15/96), 681 So.2d 937, 939.

The first track's procedure is found under La.R.S. 47:2132, as enacted by the legislature in 2008, and is titled "Refund of taxes erroneously paid." Comment (a) from 2008 under La.R.S. 47:2132 states, "[t]his Section consolidates former R.S. 47:2108 and 2108.1. It is not intended to change the law." The former statutes La.R.S. 47:2108 and 2108.1, like La.R.S. 47:2132, sets forth the procedure for taxpayers to obtain a refund of taxes erroneously paid. Jurisprudence has deemed challenges under La.R.S. 47:2132 to be "*correctness challenges*."

Thus, to file a claim under La.R.S. 47:2132, the taxpayer must have paid the taxes "erroneously." *See* La.R.S. 2132(A)(1). "Erroneous" is defined as "[i]nconsistent with established facts or with the law." BLACK'S LAW DICTIONARY (12th ed. 2024).

The second track's procedure is found under La.R.S. 47:2134. It is entitled "Suits to recover taxes paid under protest[,]" and it was also enacted in 2008. The 2008 comment to its adoption states that it "reproduces the substance of former R.S.

47:2110. It is not intended to change the law." Jurisprudence has deemed challenges under La.R.S. 47:2134 to be "*legality challenges*."

When enacted, the goal and intention of these two statutes, like any detailing the procedure for a taxpayer to recover taxes improperly paid, was to comply with La.Const. Art. 7, § 3(A), which states, "The legislature . . . shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." Thus, the question before this court is whether Taxpayers can properly utilize the procedure under La.R.S. 47:2132(A)(1) or if they were required to use the procedure under La.R.S. 47:2134(C). In doing so, we are directed by jurisprudence to look to the petition itself to determine into which category Taxpayers' challenge falls. *Gisclair*, 16 So.3d 1132.

Here, Taxpayers' petition asserts that in 2022, they paid ad valorem taxes of $85,596.01 on assets statutorily *exempt* from tax under La.Const. art. 7, § 21(A). Their petition prayed for a judgment finding that the property was not subject to tax, as the assessor *erroneously* sent them a tax notice/demand, and Taxpayers were entitled to a refund of the $85,569.01.

Taxpayers assert that they can utilize La.R.S. 47:2132 because they erroneously paid taxes to Assessor, who erroneously sent them a tax notice, prior to them recognizing that the property was exempt from taxation. Thus, Taxpayers argue that their mistake or error in failing to recognize that the property was exempt, led to the erroneous payment of taxes, and thus, allows them to utilize the procedural requirements of La.R.S. 47:2132.

Assessor argues that the petition filed by Taxpayers did not raise a claim that taxes were paid erroneously. Instead, Assessor asserts that Taxpayers challenged the validity of a tax on property that they claim is exempt. Thus, the basis for Taxpayers' erroneous payment is that he taxed exempt property, and that basis

11

categorizes Taxpayers' claim as a legality challenge which, per jurisprudence, requires Taxpayers to follow the procedural requirements of La.R.S. 47:2134(C).

The Louisiana Supreme Court, in *Triangle Marine*, 681 So.2d at 939-40 (alterations in original), recognized the two-track procedure challenges to tax assessments, stating:

> This court for some time has recognized a line of distinction between correctness and legality challenges. In *Morgan's Louisiana & Texas R.R. & Steamship Co. v. Pecot*, 50 La. Ann. 737, 23 So. 948, 950-51 (1898), we reasoned that correctness challenges are directed at issues of regularity or correctness of the assessment, such as over-valuation and misdescription, while legality challenges are directed at issues involving claims that the assessment is void for radical defects or that the assessment is inherently invalid.

> This distinction was reaffirmed and explained in *Soniat v. Board of State Affairs*, 146 La. 450, 83 So. 760, 762 (1919). In *Soniat*, this court observed that where there is an assessment of property alleged to be exempt by law from taxation, such assessment is "not an assessment within the contemplation of the law. . . and can never become[ ] the basis for the levy of a valid tax. . . ." Moreover, we reasoned in the instance there is an assessment of property "subject to taxation," *id.*, the assessment is not open to a legality challenge as having no legal existence; rather, "it is open to correction, by an increase or reduction in the valuation." *Id.* (emphasis added). In that case, the assessment must be shown to exceed or fall short of some defined "limitation of valuation" which the law so provides. *Id.*

First, we note that *Triangle Marine* was decided in 1996, some *twelve years* prior to the enactment of La.R.S. 47:2132 and La.R.S. 47:2134. Thus, its findings are based on the former statutes La.R.S. 47:2108, La.R.S. 47:2108.1, and La.R.S. 47:2110. However, the legislative intent for La.R.S. 47:2132 and La.R.S. 47:2134, as stated in the 2008 comments, was to recreate the law of the three former statutes. Moreover, *Triangle Marine* has been cited in multiple cases since the 2008 enactment of La.R.S. 47:2132 and La.R.S. 47:2134, recognizing that the two-track system is still utilized in this state. *Comeaux v. La. Tax Comm'n*, 20-1037 (La. 5/20/21), 320 So.3d 1083; *PBGS, L.L.C. v. Duplechain*, 13-278 (La.App. 3 Cir. 12/18/13), 130 So.3d 45 *writs denied,* 14-114, (La. 4/4/14), 135 So.3d 641; *Gisclair*,

12

16 So.3d 1132; *ANR Pipeline Co. v. Louisiana Tax Comm'n*, 02-1479 (La. 7/2/03), 851 So.2d 1145.

In *Triangle Marine*, like the case before us, the court had to decide which procedure the taxpayers were required to follow when claiming their exempt property was improperly taxed by an assessor. There, the district court found that the taxpayers needed to bring a correctness challenge which would be under current La.R.S. 47:2132. This court affirmed, agreeing that the challenge addressed the tax assessment's correctness. *Triangle Marine Inc. v. Savoie*, 94-1502 (La.App. 3 Cir. 11/2/95), 664 So.2d 632.

The supreme court reversed, finding that "the validity of a tax on exempt property is a challenge to the legality, not the correctness, of the tax." *Id.* at 940. It went on to state that "a challenge to a tax assessment need not contest the validity of the ad valorem tax *itself* to constitute a legality challenge. Rather, an 'as applied' challenge, such as the one asserted by the taxpayers herein, *can* be a legality challenge." *Id.* at 941. (second emphasis added).

Here, like in *Triangle Marine*, Taxpayers do not assert that the ad valorem tax, in and of itself, is invalid. Rather, they assert that, as applied in 2022, the Assessor *erroneously* assessed the property, and Taxpayers mistakenly or erroneously paid those taxes prior to recognizing that the property taxed was statutorily exempt from taxation.

While there are similarities between the *Triangle Marine* taxpayers and the taxpayers in this case, they are distinguishable. In *Triangle Marine*, there was evidence that the taxpayers had actual knowledge that the relevant property was exempt from taxation prior to paying those taxes. Thus, it was feasible that they could pay those taxes under protest, which they did. Here, when taking the facts of Taxpayers' petition as true, there is no evidence that Taxpayers had actual

13

knowledge that the property was exempt from taxation prior to those taxes becoming due and being paid. Thus, given Taxpayers' lack of actual knowledge, they could not have feasibly paid the taxes under protest.

Furthermore, in looking at the analysis and language used by the *Triangle Marine* court, we find that it did not create a bright-line rule that all challenges involving exemption of property are legality challenges. The *Triangle Marine* court held that the central issue of a case determines the procedure the taxpayer should use. It found that if the case's central issue involved the constitutionality or appropriate application of tax law, then the procedure under La.R.S. 47:2134 is proper, not mandatory. Quoting *Ford Motor Credit Co. v. Louisiana Tax Commission*, 251 So.2d 392, 397 (La.App. 1 Cir. 1971), the *Triangle Marine* court stated that a legality challenge is invoked if "*[t]he entire thrust of this lawsuit* goes to the question of whether or not a tax can be constitutionally imposed, at all, upon these intangibles." *Triangle Marine*, 681 So2d at 941 (alteration in original) (emphasis added).

We note Justice Watson's dissent in *Triangle Marine*, wherein he recognized that cases involving taxpayers seeking to qualify for an exemption to a valid tax do "not present a conflict between laws, only the application of admittedly valid tax laws to these circumstances." *Id.* at 942. Thereafter, when discussing correctness challenges, he opined that a determination of tax exemption could be considered an assessment decision because "[a]n assessor's duties are to 'enumerate and list and assess.' In order to do so, the assessor must first decide whether property may be assessed at all, i.e. whether the property is exempt." *Id.* We find Justice Watson's language very persuasive in that under certain limited circumstances, taxpayers who seek to qualify for an exemption after erroneously paying taxes on property, and are not necessarily presenting legality challenges, such as in this case.

14

Here, the central issue or "entire thrust" of the claim made by Taxpayers is not the constitutionality of a particular tax law. Rather, like in *Triangle Marine*, the central issue raised by Taxpayers is one that can be deemed "an 'as applied' challenge," as it merely involves an assertion that their property qualified for an exemption and neither they, nor Assessor, recognized this fact. Pursuant to *Triangle Marine*, such an assertion *can* require usage of La.R.S. 47:2134 as a legality challenge. We further note that the *Triangle Marine* court's use of "can" versus other mandatory language such as applied challenges *must* utilize La.R.S. 47:2134 and *must* be considered a legality challenge. Thus, we find that *Triangle Marine* provides a basis for finding that Taxpayers, under these very specific circumstances, can utilize the procedures of La.R.S. 47:2132.

Moreover, in this case, neither Taxpayers nor Assessor focuses the crux of their case on whether the property at issue was tax exempt property. In fact, in subsequent years, the record shows that the property in question has not been taxed by Assessor. Seemingly, Assessor recognizes that the property is exempt from taxation. Rather, in this case, Assessor is merely attempting to avoid refunding the 2022 taxes, erroneously assessed and erroneously paid by Taxpayers, by focusing on what procedure was or was not available to Taxpayers. Thus, we find that the property erroneously assessed by the Assessor and erroneously paid by Taxpayers was in fact property that is statutorily exempt as a public entity's property used for public purposes.

Additionally, Assessor cites *New Orleans Riverwalk Marketplace, (NORM)* as resolving "all issues presented in this appeal[.]" Like *Triangle Marine*, we find *NORM* factually distinguishable from this case. As evidenced by their numerous

filings combating the appropriateness of the assessments prior to the taxes becoming due, the *NORM* taxpayers had actual knowledge of their dispute regarding the taxes assessed. As such, the *NORM* taxpayers could have feasibly used the procedure outlined in La.R.S. 47:2134. Moreover, La.R.S. 47:2132 requires an erroneous payment of taxes. The *NORM* taxpayers deliberately made no payments, which is very different from an erroneous payment of taxes.

Here, no such numerous filings are present. There is nothing in the record or past proceedings indicating that Taxpayers had any knowledge that the property was exempt prior to their erroneous payment. Instead, when taking the allegations of the petition as true, it is reasonable to find from the specific circumstances before us that Assessor, coupled with the Sheriff, sent an erroneous tax notice and demand for payment of taxes allegedly due, and Taxpayers simply made an error or mistake by paying the taxes before realizing their mistake and requesting a refund.

Like Assessor, Taxpayers focus on what procedure was available to them under the circumstances of this case. Taxpayers assert that they erroneously paid taxes on exempt property in 2022, fitting squarely into entitlement to the procedure present in La.R.S. 47:2132.

Further, Taxpayers argue their entitlement to utilize the procedure outlined in La.R.S. 47:2132 because it is not feasible for them to have utilized the procedure outlined in La.R.S. 47:2134. Taxpayers' problem under La.R.S. 47:2134 is that it requires a taxpayer to pay the taxes under protest. Taxpayers assert that they had no actual knowledge that the property was exempt, and, as such, could not feasibly pay the assessed taxes under protest. Taxpayers point out that if this court would find that the procedure under La.R.S. 47:2134 was the only one available to them, they have no remedy to recover an illegal tax, and such a result runs afoul with the

requirement of La.Const. art. 7, § 3(A) to "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer."

We acknowledge the jurisprudence cited by Assessor and otherwise present. However, our reading of that jurisprudence is that there is no bright-line rule that a taxpayer raising an "as applied" challenge to a tax law must utilize the procedure under La.R.S. 47:2134. *See Triangle Marine*, 681 So.2d at 940 (use of "can" versus "must" in discussing "as applied" challenges). Further, we find that the taxpayers in *Triangle Marine* and the cited jurisprudence relied heavily upon by Assessor, i.e. *NORM*, are factually distinguishable from Taxpayers in the case before us.

Finally, the primary focus of this case is not rooted in the determination of whether taxes are applicable to certain properties. Rather, the focus of this case is on what procedures are available, *after the fact*, when a taxpayer erroneously pays taxes on exempt property. Given the specific facts of this case indicating an erroneous assessment by the Assessor, and the erroneous payment by Taxpayers, along with the unavailability of any other recourse to Taxpayers, we find that Taxpayers have a right of action under La.R.S. 47:2132. As stated above, our finding is based upon our review and ascertaining the legislative intent and the reason or reasons which prompted the Legislature to enact La.R.S. 47:2132, i.e., to comply with La.Const. Art. 7, § 3(A) (emphasis added) to ***"provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer."*** Accordingly, we find that Taxpayers' assignment of error has merit.

## **DECREE:**

Based on the foregoing, the judgment of the Board of Tax Appeals, granting an exception of no right of action in favor of Natchitoches Parish Tax Assessor Timothy Page and the Louisiana Tax Commission is reversed, and this matter is remanded to the Louisiana Tax Commission for a full hearing, consistent with this

17

opinion, on Northwestern Louisiana Cancer Center, LLC and Natchitoches Parish Hospital Service District's refund claim. All costs of this appeal are cast against the Natchitoches Parish Assessor Timothy Page and the Louisiana Tax Commission in the amount of $794.00. La.R.S. 13:5112(A).

**REVERSED AND REMANDED.**